## OLIVER *v.* THE STATE.

1. The facts necessary to be shown before declarations are admissible as dying declarations under the Penal Code, § 1000, may be proved by circumstances, and by witnesses other than the witnesses testifying to such declarations; and, under the evidence in this case, there was no error in admitting the testimony objected to as dying declarations.
2. Under the facts in this case, there was no error in failing to charge the law of involuntary manslaughter.
3. The evidence authorized the verdict, and the judgment of the court refusing a new trial will not be disturbed.

Submitted November 18,—Decided December 21, 1907.

Indictment for murder. Before Judge Martin. Pulaski superior court. October 4, 1907.

H. F. *Lawson*, for plaintiff in error. *John C. Hart, attorney-general*, and *E. D. Graham, solicitor-general*, contra.

HOLDEN, J. The accused was convicted of murder, and sentenced to life imprisonment. He brings error to this court on the refusal of the judge below to grant a motion for a new trial. Henry Ryan, a witness for the State, testified that on Saturday night, between 10 and 11 o'clock, he and the deceased, who was the wife of the defendant, were on their way to a supper at a negro's house about 85 yards distant from the scene of the killing, when they met the defendant in the road, and he insisted on his wife returning home with him, which she declined to do. While they were quarreling about the matter, the defendant said to the deceased "If you don't go home with me from here, I will kill you;" whereupon the witness said, "You all stop your foolishness and quit." The defendant then said "it was man and wife, and everybody ought to let them alone." The witness then told them when they got through

with their "foolishness" to come on to the supper, and walked off, leaving defendant and deceased in the road together. About five minutes later, while standing at the gate of the house where the supper was given, a pistol shot was heard, and when an alarm was given by a woman and her boys who had just passed through the gate in that direction, the witness, with others, went to the place of the shooting, some 70 yards from where he was standing when the shot was fired, and found the deceased lying in the road, with a pistol-ball wound in her head. Next morning, after a physician had said deceased could be moved, she was taken to a house, where she died the following Monday about sundown. The witness testi- fied that there were signs of scuffling in the road. Another wit- ness testified, that, early on the Saturday night of the killing, the defendant came to the home of the witness and asked for his wife, and, when told she was not there, said that if she did not go home with him, he was going to kill her. This witness further testified that the defendant did not seem to be angry when he made this statement. Evidence was offered by the defendant seeking to im- peach this witness, and sustaining evidence introduced by the State in rebuttal. Another witness for the State testified in reference to a statement made by the deceased on Monday following the in- fliction of the wound, to the effect that the defendant shot her and · shot her for nothing. The testimony of this witness more fully appears from the opinion. Several witnesses stated that the defend- ant did not visit the deceased after she was shot.

The defendant in his statement claimed that he and his wife were returning from the supper referred to; that his wife, the deceased, was drunk, and that she saw the pistol in his pocket and insisted on firing it; that the deceased snatched the pistol from his pocket, and he then grabbed her to keep her from falling and also from shoot- ing it; that he never got his hand on the pistol at all; and that while they were "tussling," and he was reaching for the pistol, she stumbled, and the pistol fired while in her hands and shot her. Defendant also stated that the pistol was not in good fix and would not stand cocked. This condition of the pistol was corroborated by other witnesses, one of whom stated that it was a Smith & Wesson make, double-action pattern, and would fire when the trigger was pulled, and also that it was more dangerous than the average pistol, "because it will shoot of itself."

Evidence was introduced by the defendant in support of a contention that the witness Ryan, the substance of whose testimony has been given above, was at the supper referred to, continuously from the early part of the night up to the time of the shooting; and evidence was offered by the State in rebuttal of this contention.

1. The plaintiff in error contends that the court committed error in admitting the testimony of George Bunn, to the effect that the deceased stated that the plaintiff in error, Junior Oliver, shot her and shot her for nothing. This was admitted as a dying declaration, and was objected to on the ground that a proper foundation had not been laid for its admission. The court charged the jury not to consider this testimony unless it was shown from the evidence that the declarations were made by the deceased as testified to, and unless the deceased at the time of making them was in the article of death and conscious of her condition. It appears from the evidence that these declarations on the part of the deceased were made on Monday, and that the deceased died Monday evening about sundown. About 3 o'clock in the afternoon on Monday she went into a stupor and remained in this condition until her death. The witness testified that the deceased said she would not live, and then made the statement that the defendant shot her and shot her for nothing. The witness further testified that it was after she made this statement that she said she would not live. The witness in one part of his testimony said that the deceased made the statement referred to in the morning between 10 and 11 o'clock, and in another part he said that she made the statement just before 3 o'clock in the afternoon. It is uncertain from the testimony of this witness when the statement was made, and uncertain whether it was made before or after the deceased told him, or said in his presence, that she would not live. The testimony shows, however, that the deceased was shot in the head, and that on Monday, at the time she made the statement testified to, her brains were oozing out of her head from the wound inflicted by the pistol shot. The witness Ida Woodall testified that, between 7 and 8 o'clock on the morning of the day she died, the deceased stated that she was going to die. In view of the character of the wound, the fact that her brains were oozing out at the time she made the declaration, and the testimony above referred to, the court committed no error in permitting the witness to testify that the deceased stated that the de-

fendant, Junior Oliver, shot her and shot her for nothing, especially in view of his charge to the jury that they should consider this evidence only in case they believed the statement, if made by the deceased, was made while she was in the article of death and conscious of her condition.

2. The plaintiff in error assigns the failure of the court to charge the law of involuntary manslaughter as error, contending that such charge should have been given in view of the testimony of a witness for the State, who stated the plaintiff in error, on the night of the homicide, told him that he killed his wife accidentally. The plaintiff in error, in his statement to the jury, claimed that the killing was accidental, and that the wife, while holding the pistol in her hand, shot herself and inflicted the wound from which she died. The theory of the State was that the plaintiff in error shot his wife intentionally, and that the killing was murder. The theory of the plaintiff in error was that the kiling was done by the deceased herself while she had the pistol in her hand, and that the killing was an accident. There are no facts or circumstances in the testimony, or in the statement of the defendant, which would authorize the court to charge the law of involuntary manslaughter. Under the evidence and the defendant's statement, the killing was either murder, or an accident relieving the defendant from any crime.

3. The only two assignments of error referred to by counsel for plaintiff in error in their brief are the ones hereinabove dealt with. The evidence fully warranted the verdict; and there being no merit in the two assignments of error above referred to, the judgment of the court below in overruling the motion for a new trial is hereby                          *Affirmed. All the Justices concur.*