## JONES v. THE STATE.

1. An assignment of error to the overruling of a motion to change the venue can not be made in a motion for a new trial, but should be laid in exceptions duly made.

2. In the trial of a murder case, if at the time of making declarations the condition of the wounded party making them, the nature of his wounds, the length of time after making the declarations before he expired, and all the circumstances make a prima facie case that he was in the article of death and conscious of his condition when he made the declarations, such declarations should be admitted in evidence by the court, under proper instructions to the jury.

3. The admission of dying declarations as evidence does not contravene that provision of the constitution of the United States which provides that in all criminal prosecutions the accused shall be confronted with the witnesses against him.

4. Statements made by a defendant charged with murder, that he did the killing charged because of certain facts which, if true, furnished no legal excuse or justification therefor, amount to a confession.

5. The evidence warranted the charge on conspiracy.

6. No distinction need be made in an indictment, or in a verdict, between principals in the first and second degree; and where two persons are charged in an indictment with murder as principals in the first degree, if the evidence shows one of them to be guilty in the second degree, he can be convicted under such indictment.

7. Points made in the record, but not referred to in the briefs of counsel, will be treated as abandoned.

8. An assignment that a charge stating that the burden was on the defendant to prove an alibi by a preponderance of the evidence was error, because the defendant is only required to prove such defense to a reasonable certainty, is without merit.

9. The assignment of error on the charge upon the subject of circumstantial evidence is without merit.

10. Where two persons are jointly indicted for an offense, and there is evidence of a confession by one, he has no good ground for complaint that the court failed to charge that such evidence could only be considered as against him.

11. Under the facts of this case, the defendant Porter Jones was not injured by the failure of the court to charge the jury that the evidence of statements made by the deceased to the effect that Albert Jones shot him, admitted as dying declarations, could not be used to show that Porter Jones shot the deceased.

12. The charge upon the subject of good character was sufficient, in the absence of a timely written request for other instructions thereon.

13. The charge of the court, construed as a whole, could not have been understood by the jury to mean that if either one of the two defendants jointly indicted was guilty, both should be convicted.

14. Where, on the trial of two persons charged with murder, the State proved by evidence, both direct and circumstantial, that a homicide

was committed, and the accused did not controvert that fact, but introduced evidence which referred to the deceased as having been killed, and as to one of the accused sought to prove an alibi, and as to the other sought to. show insanity and previous good character alone, after conviction it furnished no ground for a new trial that the court in charging the jury referred to the death of the deceased as a homicide and told the jury that "The defendants in this case deny, both of them, that they were present and perpetrated the homicide, committed the homicide, or were present aiding and abetting in its perpetration," there being nothing in the record or bill of exceptions to show that this was not a correct statement of the position taken by the accused, or their counsel, and the court having certified that there was no contention on the part of defendant's counsel that a homicide had not been committed. (ATKINSON and HOLDEN, JJ., dissent from the ruling in this note.)

Argued December 16, 1907.—Decided March 2, 1908.

Indictment for murder. Before Judge Lewis. Putnam superior court. October 21, 1907.

*John R. Cooper* and *Akerman & Akerman,* for plaintiff in error.

*John C. Hart, attorney-general,* and *Joseph E. Pottle, solicitor-general,* contra.

HOLDEN, J. Porter Jones and his brother, Albert Jones, were jointly indicted for the murder of Robert Adams. They were tried together and found guilty of murder, with recommendation to mercy. Both made a motion for a new trial, which was granted to Albert Jones and denied to Porter Jones, who filed a bill of exceptions to the judgment of the. court below refusing him a new trial.

.1. The defendant Porter Jones made a motion for a change of venue, upon the ground that he could not get a fair and impartial trial in Putnam County, because of false rumors, threats of mob violence, excitement and indignation among the people, and high feeling against the defendant. After hearing evidence in behalf of the State and the defendant, the court overruled the motion, and one ground of the motion for a new trial is the refusal of the court to grant the motion for a change of venue. If the defendant wished a review of the judgment refusing the motion for a change of venue, proper exceptions to such judgment should have been made. It does not appear that any exceptions were filed. The refusal of such motion can not be made the ground . of a motion for new trial. *Williford* v. *State,* 121 *Ga.* 173. It appears, however, from the evidence introduced upon the hearing

of said motion that the court did not abuse its discretion in refusing to grant a change of venue, and his judgment overruling the motion would not be overturned, even if we were permitted to consider the question as to whether or not the court committed error in rendering the same.

2.　Defendant complains that the court committed error in allowing the testimony of Mrs. Adams that the deceased told her that Albert Jones shot him, that they had no words and he did not know what he (Albert Jones) did it for.　This testimony was admitted as dying declarations of the deceased, which the evidence shows were made about 15 minutes before his death and a short time after he received the wounds which caused his death. The deceased was found lying on the ground near his home a short time after pistol shots were heard, and the words testified to were the only ones he uttered after he was found.　According to the testimony of the physicians, he was shot through the heart.　There was no direct testimony that the deceased was conscious of the fact that he was going to die, but the evidence was sufficient to warrant the conclusion that he was aware of this fact when he made the statements.　In order to admit declarations of the deceased as dying declarations, it is unnecessary to prove by direct testimony that he was in the article of death and conscious of his condition, but circumstances may be shown from which these facts may be inferred.　Whenever such circumstances make a prima facie case, it is the duty of the court to admit the testimony.　The nature of the wound, the condition of the deceased, and all the circumstances may be shown to illustrate the question as to whether or not the deceased was in the article of death and conscious of his condition when the statements were made, and if such circumstances were sufficient to make a prima facie showing that the deceased was in such condition and conscious thereof when he made the statements, the question should be submitted to the jury, leaving them to determine whether the evidence was sufficient to establish the dying condition of the deceased and his knowledge of such condition.　In this case, the fact that when his wife found him the deceased was prostrate on the ground; that he was shot through the heart; that he was unable to get one of his arms to the shoulder or neck of his wife, who was assisting him to his home; that he never spoke again after the words complained

of were uttered, and that he died in 15 or 20 minutes after making the statement, were circumstances from which the jury might infer that when he made the declarations he was in the article of death and conscious of his condition; and it was the duty of the court to submit such evidence to the jury, under a proper charge, which was given, that they must not consider it, but must ignore it, unless they believed that the deceased was in the article of death and conscious of his condition at the time, and should only consider them in the further event that they believed such declarations were in fact made. *Anderson* v. *State,* 122 *Ga.* 161; *Young* v. *State,* 114 *Ga.* 849; *Oliver* v. *State,* 129 *Ga.* 777.

3. The admission of dying declarations does not contravene that provision of the constitution of the United States which declares that in all criminal prosecutions, the accused shall be confronted with the witnesses against him. *Campbell* v. *State,* 11 *Ga.* 353. What is said here and in the preceding division of this opinion disposes of the 3d ground of the amendment to the motion for a new trial, complaining of the testimony of another witness who testified to the declarations made by the deceased.

4. A witness for the State testified that the defendant was in his store during the afternoon of the day the defendant received the wound from which he died, and that the following conversation occurred between the defendant and the witness: "I asked him who did it, and he said, 'Did what?' I said, 'Killed Mr. Adams.' He asked me if he was dead. I told him I thought so. He said 'Thank God; I did it.' He asked how many times he was shot. I told him I didn't know except what I had heard over the telephone, and that was very little. He said Abe Branch owed him some money, and he went to see Abe and was coming back, and saw somebody plowing, he thought was Paul Wells, that spoke to him and asked him why he did not bring him some of that good liquor, and that he wouldn't have taken that from anybody; and that he killed his brother too." Defendant complains that there was error in the admission of this testimony, because the proper foundation had not been laid; and that the confession was not freely and voluntarily made, and that it was not a confession. The witness testifying to these confessions stated that there was not the slightest hope of benefit, nor the remotest fear of injury held out to the defendant by him, and that the defendant made

the statements freely and voluntarily in response to an inquiry from the witness. There was nothing whatever in the testimony indicating that the statements were not made by the defendant under these circumstances, but the evidence shows, on the contrary, that a proper foundation was laid for the introduction of this testimony. The declaration of the defendant to which the witness testified clearly amounted to a confession. Where a party makes a statement that he killed another, and at the same time the admission is made states that he was justified in killing him, or states facts which, if true, would justify him, this does not amount to a confession, and it is error to treat such a declaration as a confession. But in this case, in connection with the statement that he killed Adams, the defendant states that he thought Adams was Paul Wells, and that Adams asked him why he didn't bring him some of that good liquor. He said he would not have taken that from anybody, and, besides the fact that the deceased made this statement to him, the deceased killed his brother. The fact that the deceased made to the defendant the statement above referred to certainly would be no excuse for the killing, nor would the fact that the deceased had previously killed a brother of the defendant afford any justification for the killing of the deceased·by the defendant. . Hence, it can not be said that the defendant, at the time he declared that he had killed Adams, made any statement of facts which would justify the killing. His statement to the witness was a clear and unqualified confession of murder, and the court did right in allowing this testimony to go to the jury. When the defendant voluntarily made the statement that he killed the person of whose murder he is charged, and said nothing else except to give as his excuse for the killing the existence of facts which, if true, would not amount to a legal excuse or justification for the killing, such statement amounts to a confession. *Owens* v. *State,* 120 *Ga.* 296 ; *Riley* v. *State,* 1 *Ga. App.* 651.

5. The court charged the jury that the indictment charged both of the defendants as actual perpetrators of the crime and as principals in the first degree, but that if the evidence showed that one of the defendants was guilty as principal in the second degree, the jury would be authorized to convict him under the indictment, even though he was not the actual perpetrator of the crime, but was present at the scene thereof, actively participating

in it, aiding and abetting in its perpetration, with the common purpose and intent with the actual perpetrator to commit the crime, with malice. Defendant complained of this charge, because he says the defendant could not be convicted under this indictment, if the evidence showed that he was a principal in the second degree; and further complains on the ground that there was no evidence of conspiracy, or that either of the defendants was guilty, if guilty at all, as principal in the second degree. It appears from the testimony that a diagram was introduced in evidence, which does not appear in the record, but the testimony in regard to this diagram indicated that there were tracks of the deceased from his plow in the field towards his house, and that these tracks indicated that he was running, and that the deceased, while running from his plow in the field towards his house, was intercepted by some one whose tracks "came from the hedgerow and went back to the hedgerow; they intercepted the tracks we thought was Adams' tracks; they appeared to be running tracks." Another witness testified that the telephone line is along a public road, and that the defendant Porter Jones told him, "I left that telephone pole and went straight to where Mr. Adams was." The theory of the State was that one of the defendants shot at the deceased while he was at the plow, and that after he began running towards the house the other defendant, running from the hedgerow, intercepted him and shot at him. There was evidence that 5 or 6 shots were fired, that 3 of them were in quick succession, and that there was a short interval before the other 2 or 3 shots were fired, which were likewise fired in quick succession. The evidence admitted as dying declarations of the deceased pointed to one of the defendants as having killed him, and the evidence of the confessions of the other defendant pointed to him as having done the killing. We think the court was justified in charging on the theory of conspiracy, under all of the evidence appearing in the record.

6. There was no error in the court charging the jury that if they believed one of the defendants was guilty as principal in the second degree, they would be authorized to find him guilty under the indictment, though it did not charge him guilty in the second degree. Punishment for a principal in the second degree is the same as the punishment of a principal in the first degree, and

there is no need to make any distinction between them in the indictment. If an indictment jointly charges two persons as principals in the first degree, and the evidence shows that one of them is guilty as principal in the second degree, he can be convicted under such indictment. *McWhorter* v. *State,* 118 *Ga.* 55, and authorities cited; *Lofton* v. *State,* 121 *Ga.* 172.

7. In the 6th assignment of error in the amendment to the motion for a new trial, the defendant complains of the charge given by the court on the subject of insanity. It is not stated in any manner whatever what are his grounds of objection to such charge; but he simply states that the court erred in charging the jury as set out, and then proceeds to set out a long excerpt from the charge. This assignment of error is not referred to in the brief of counsel, and, under the rules of the court, will be considered as abandoned; though it could not be considered even if it had been referred to in the brief, as the grounds of the objection to the charge are not stated, and many portions, if not all, of the charge contained in this extract are correct. The Civil Code, §5530, provides that the party desiring to review the judgment of the court in granting or refusing a new trial shall specifically set out the errors complained of, and rule 6 of the Supreme Court (Civil Code, §5605) declares that bills of exceptions must distinctly specify the points on which error is assigned.

8. The court charged the jury that the burden was upon the defendant to establish by a preponderance of the evidence his defense of alibi; but he further charged them that if it did not amount to a defense, the jury should consider all the evidence in connection with the alibi together with the other evidence in the case, and if the evidence in reference to an alibi, together with the other evidence, raised a reasonable doubt as to the guilt of the accused, he should be acquitted. The defendant claims that this was error, because "the defendants are only required to prove the alibi to a reasonable certainty, and not by a preponderance of the evidence." We fail to see that this is any good ground for objection, because we are unable to see that the burden of proving an alibi to a reasonable certainty is any less burden than proving it by a preponderance of the evidence.

9. The court charged the law upon the subject of circumstantial evidence. In view of the whole charge upon this subject, the

specific assignment of error made by the defendant is without merit.

10. The defendant assigns error on the failure of the court to charge the jury that they should not consider the confession of the defendant Porter Jones against the other defendant, Albert Jones. We do not see how Porter Jones can complain of this. The other assignment of error upon that part of the charge relating to the evidence of a confession and of dying declarations, on the ground that the statements made by the defendant, if made, did not amount to a confession, and the declarations made by the deceased, if made, did not amount to dying declarations, have been disposed of in a previous division of this opinion, in dealing with objections to the admissibility of testimony in reference to these two matters.

11. The failure of the court to charge the jury that the evidence of statements made by the deceased, admitted as dying declarations, that Albert Jones shot him, could not be used to show that Porter Jones shot the deceased, did not injure Porter Jones, under the facts of this case. If Porter Jones wanted any special instructions upon how this evidence could be used, a written request to charge should have been made.

12. The court charged the jury in reference to the evidence of good character of the defendant, and complaint is made that the charge is not full enough on this subject. This is not a good ground of exception to the charge. The court charged the jury that the evidence was relevant and pertinent to be considered by them for the purpose of passing on the guilt or innocence of the accused, and charged them if they should come to the conclusion, taking this evidence as to character in connection with all the other evidence in the case, that the defendant was not guilty, or if they had a reasonable doubt of his guilt, they should acquit him. In the absence of a written request, the charge above referred to was sufficient.

13. The assignment of error in the 12th ground of the amendment to the motion for a new trial, upon the charge of the court quoted therein, on the ground that the instructions meant that if the evidence established the guilt of either one of the accused, it would be their duty to convict both of them, is without merit. We do not think this portion of the charge warrants such a con-

struction, especially in view of the other instructions given by the court in this connection, which would remove from the jury any possible misapprehension that the court intended to convey the idea embraced in this exception.

14. The last three assignments of error in the amendment to the motion for a new trial complain of the use of the word "homicide" in the extracts from the charge quoted in these three assignments of error. A portion of these extracts is as follows: "To authorize a conviction in this case of either of the defendants on trial, the evidence must show either that he was the actual perpetrator of the homicide, or was present at the scene of the homicide, actively participating in the act, aiding and abetting in its perpetration, with a common purpose and intent with the actual perpetrator to commit the homicide, with malice. I shall explain later on that term. So if you conclude, from the evidence and the law that will be given you in charge in this case, that the defendants, or either one of them, committed this homicide, or was present aiding and abetting in the homicide, with malice as I shall later explain that term, you would be authorized to convict in this case. There are two questions for you to settle in this case. One question is whether both of the defendants, or either one of them, killed the deceased, or was present aiding and abetting in the homicide. If the defendants or either one of them was there and committed the homicide, or was present at the scene aiding and abetting in the killing, and you so conclude from the evidence, then the duty devolves upon you to grade the homicide and say what it is; whether it was murder as charged or not. One of the main questions is purely a question of fact, and that is whether or not these defendants or either one of them was present and participating in the homicide; whether the defendants or either one of them perpetrated the homicide, or was present aiding and abetting in the perpetration. The defendants in this case deny that they perpetrated this homicide; they deny, both of them, that they were present and perpetrated the homicide, committed the homicide, or were present aiding and abetting in its perpetration."

All the members of the court concur in the view that the evidence warranted the verdict, and that no new trial should be granted, except as to the point just above stated. In regard to

this, the opinion of a majority of the court, as prepared on their behalf by Justice Lumpkin, is as follows: Albert Jones and Porter Jones were indicted and tried for the murder of Robert F. Adams. The evidence showed, without conflict, the following facts, among others: Several years previous to the alleged crime Adams had killed a brother of the two defendants. At a later date he moved to the vicinity of the "old Jones place." On the day in question Adams went to his field to plow. Shortly afterward five pistol shots were heard. His wife and others investigated, and found him lying not far from where his plow was standing, and that he was shot through the heart. He stated, before dying, that Albert Jones had shot him, and that he did not know why it was. He died in a very short time. He had only one pistol, and that was left lying on the mantel-piece at his house when he went to the field, and it was rusty. Two physicians who examined the body testified that the general rule is, that, where a bullet is fired and passes through a person, the wound at the point of entrance presents a different appearance from that at the point of exit; that such was the case in this instance; and that the character of the wounds showed that Adams was shot in the back, the ball passing through his body. A short time after the occurrence, Porter Jones went into a store and called for cartridges. On being asked who killed Adams, he said that he did it; that Adams asked him "why he did not bring him some of that good liquor;" that he could not take that from anybody; and that Adams had killed his brother. There was also evidence to show that Porter Jones was at or near the scene of the shooting shortly before it occurred (one witness testifying that he was near there and asked where Adams was about half an hour before the killing, and later was seen to go in the direction where Adams was plowing, five or ten minutes before shots were heard; and another witness that he was seen in the vicinity about half an hour before the firing). The evidence of witnesses for the defense tended to prove an alibi for Albert Jones, but none for Porter Jones. There was an effort to show, by weak evidence, insanity or peculiarity on the part of Porter Jones; also some evidence of good character on his part; though a witness introduced for that purpose stated that he (Jones) carried a pistol for some weeks "before the killing." The evidence for the defense treated the shooting as a killing by some

one. Thus one witness introduced by the defendants said: "On or about the 17th day of June of this year, the time Mr. Adams was killed," etc. And again (on cross-examination): "I didn't hear his bell until it rung after he got killed." Another witness, introduced for the defense to prove good character, testified, on his examination in chief: "I have known him [Jones] all his life, and never heard anything against him until this killing of Mr. Adams." Still another sworn for the defendants, on his direct examination, when describing the locality said: "I heard the witness testify where Mr. Adams was killed." These expressions are mentioned, not as direct proof of the homicide, but to show that some of them were drawn out by the defendants' counsel from their own witnesses on the direct evidence, and that both sides treated the death as a killing or homicide, and made no issue or contest as to that fact. There was no evidence at all tending to conflict with the proof showing a homicide. Albert Jones made a statement setting up an alibi for himself. Porter Jones made none. The presiding judge certified, in a note to the motion for a new trial, that there was no contention on the part of defendants' counsel that a homicide had not been committed. In his charge the judge used the expression that the defendants denied that they committed "the homicide," and contended that they had nothing to do with it, and employed the word "homicide" more than once. For this a new trial is asked, substantially on the ground that the use of that word assumed that a homicide had been committed,—not that it had been committed by the defendants, but by somebody. For this casual employment of the word "homicide" alone it is proposed to upset the verdict. Should it be done? We think not. A homicide is defined to be "the killing of a human being, and is of three kinds,—murder, manslaughter, and justifiable homicide." Penal Code, §59. The use of the word "homicide" did not imply criminality; else there could be no justifiable homicide. It does imply a killing; and the court told the jury that the defendants denied that they were guilty of this homicide or were concerned in it. The argument for a reversal must hinge on the position that perhaps there was not any killing at all; or, if so, that it may not have been by a party other than the deceased; and perhaps he did the killing himself; and that therefore there was error in the use of the word "homicide."

This would still be a killing, but it would be more accurately called a suicide or a self-slaying than a homicide. Possibly the direct evidence by dying declarations, negativing any idea of suicide or self-killing, was a mistake; possibly the doctors were mistaken; possibly the defendant himself was mistaken, when he said Adams was killed and he did it; possibly the whole theory of defense on which his case was tried, and on which counsel introduced evidence calling the death a killing, was a mistake. But can it be disregarded, after a conviction, and the judge reversed for not having submitted, or having failed to duly recognize, some other possibility never relied on or placed before the court and jury, and probably never even dreamed of till after verdict? If counsel did not in terms call the death a homicide or killing, they evidently treated it as such and introduced evidence so treating it, and thus the presiding judge was led to deal with it as they did. If Adams was killed by a shot, it was either homicide or a slaying by his own hand. But it seems to us that the hypothesis that a man who appears to have had no weapon shot at himself five times, missed himself four times, and then hit himself in the back near the spinal column, eight and a half inches below the seventh cervical vertebra, the ball ranging only slightly upward, producing death, is rather too remote a possibility to cause a reversal on a theory of suicide or self-slaying by accident, urged for the first time after conviction. If with such uncontradicted evidence of a killing, and when there was no contention to the contrary, the use of the word "homicide" should cause a reversal, why should it not also be error for the judge to assume or appear to assume that Adams is dead at all? The case is much stronger and furnishes less reason for a reversal than that of *Young* v. *State*, 125 *Ga.* 584. If the court should have guarded against excluding the theory of suicide, why not also that of self-defense, or defense of family, or all the other possible defenses to an indictment for murder? All of them may be supposed. But the answer is plain: because neither they nor the suicide or self-slaying theory were in the case.

In *Weeks* v. *Cottingham*, 58 *Ga.* 559, it was held that a judge may state what either party admitted or contended for, and such a statement will be taken to refer to what transpired in court and to be true, unless it be otherwise represented in the bill of

·exceptions. Here the judge told the jury what the contention of the defendants was. He said: "The defendants in this case deny that they perpetrated this homicide; they deny, both of them, that they were present and perpetrated the homicide, committed the homicide, or were present aiding and abetting in its perpetration." And there is nothing to show that this statement was not a true and correct statement of the position assumed on the trial.

In *Johnson* v. *State,* 30 *Ga.* 426, it was held not to be error for the court to state to the jury a fact, as a fact, which is admitted by counsel for the defense, and on which there is no issue. See also *Walker* v. *Wooten,* 18 *Ga.* 120 (5); *Elder* v. *Cozart,* 59 *Ga.* 199; *Savannah, Fla. & W. Ry. Co.* v. *Flannagan,* 82 *Ga.* 579 (8); *Brantly* v. *Huff,* 62 *Ga.* 532 (7).

In *Sanders* v. *State,* 113 *Ga.* 267, 269-270, the court charged as follows: "Homicide is the killing of a human being; and under my view of the case there is only one grade of homicide involved in this case, and that is murder." This was alleged to be error, because it expressed an opinion on the part of the court that the ·accused were guilty, and because it deprived the jury of the right to find the accused guilty of any degree of homicide less than ·murder. Five persons were accused of the crime. Two of them made statements denying that they shot the deceased, though they ·admitted having been present and having discharged their guns. They did not in express words admit that there was a murder or ·a homicide, or deny it. The evidence tended to show murder. ·Chief Justice Simmons, in delivering the opinion of the court, .said: "We find absolutely nothing that could, in any view of the ·case, warrant a conviction for any lower degree of homicide than murder. There is no hint of any such lower degree. Under the ·evidence as it appears in the record, the defendants were either guilty of murder or else innocent of any participation in the homicide." It was also said, that, after examining the entire charge, the court was of the opinion that by the portion objected to no intimation was made as to the opinion of the court with reference to the guilt or innocence of the accused; and the judgment was affirmed. *Dotson* v. *State,* 129 *Ga.* 727. This court has often held that a charge which did not submit, but excluded, the possibility of finding a grade of homicide which was not indicated either

by the evidence, the statement, or the contention of the defend-ant, furnished no ground for a new trial. In Taylor *v.* Scherpe etc. Co., 133 Mo. 349, 366, it was held that "what all parties to a litigation treat and assume as a fact during the entire progress of the trial before the court, the court, without error, may assume for convenience in drafting its instructions to the jury." In Martin *v.* People, 13 Ill. 341, it was held that where the court in his charge assumes the existence of certain facts about which the par-ties are agreed, neither party can afterwards make the assump-tion a ground of objection to the instructions. The agreement referred to in this case does not appear to have been formally made, but to have arisen from the introduction, by both sides, of testimony tending to show the fact, and because both dealt with it as true, and there was no dispute in regard to it. In State *v.* Rash, 12 Ired. (N. C.) 382, it was held that the court may as-sume as true that which the prisoner, in his defense, has treated as true; as, where a prisoner indicted for murder does not pretend that, if guilty of the homicide, he is guilty of anything but mur-der; but relies, in his defense, solely upon the ground that he was not guilty of the homicide. It was said that "It never can be error in the judge to assume that as true which the prisoner, in his defense, has treated as true." State *v.* Miller, 1 Dev. & Bat. 500. See also, on the subject, State *v.* Williams, 47 N. C. 194; Gose *v.* State, 6 Tex. Cr. App. 121; Walsh *v.* Ætna Life Ins. Co., 30 Iowa, 146 (V) ; Hinds *v.* Harbott, 58 Ind. 121; Drinkout *v.* Eagle Machine Works, 90 Ind. 423; People *v.* Phillips, 70 Cal. 61; *Wadley Lumber Co.* v. *Lott,* ante, 135. It can not be said that a different ruling should be made as to this point on account of our statute prohibiting a judge from expressing an opinion on the evi-dence. Several of the States from which decisions are cited above have statutes prohibiting a judge from expressing an opinion on the evidence. And the decisions of this court cited were all made after the passage of the act of 1850 which is now embodied in the Penal Code, § 1032.

In Brown *v.* State, 72 Miss. 997 (17 So. 278), the accused was prosecuted for rape. He admitted having had sexual intercourse with the prosecutrix, but denied that it was rape. It was of course error to refer to the prosecutrix as the female who had been "raped," and to assume that "the crime was committed." In Newton *v.*

State (Miss.), 12 So. 560, three men were charged with the rape of a woman. It was contended by the State that one of them committed the rape and that the other two were present aiding and abetting him. Evidence was introduced for the defense to disprove the commission of any rape by showing that a number of persons were near enough to have heard any screams or outcries, had there been any. It was held that a charge which assumed the guilt of the first-mentioned person, and only submitted as to the other two whether they were present aiding and abetting him, was error. In Bond *v.* People, 39 Ill. 26, two men named Bond and Shinn were indicted for assault with intent to murder. The court charged the jury in these words: "And if the jury believe from the evidence that Bond and Shinn were together and acted in concert at the time the assault to murder was made, they should find them equally guilty." The Supreme Court said: "The objection is obvious. By this construction the jury were plainly told that the defendants made an assault to murder." A comparison of these cases with the one now under consideration will, we think, show that they were not similar to it.

The views of the writer upon the charges complained of, wherein the word "homicide" was employed, in which views Justice Atkinson concurs, are as follows:

The defendant complains that these charges given by the court below assumed that a homicide had been committed, and was an expression of opinion by the court that a homicide had been committed. Adams, the deceased, left his home after dinner, to do some plowing in a field near a traveled road. About 1:45 o'clock in the afternoon 5 or 6 pistol shots were heard. The first three were in rapid succession, and after a short interval the other two or three occurred, which were also in rapid succession. A few minutes after these shots occurred, Adams was found on the ground between his house and the place where his mule was standing hitched to a plow in the field. Upon hearing his groans, his wife went to him, and, with her assistance, he walked to his house, where he expired in a few minutes. Evidence of an alibi was introduced by the defendant Albert Jones, and the court granted him a new trial. The deceased stated to his wife that the defendant Albert Jones shot him. Evidence was introduced of confessions of the other defendant, Porter Jones, that he killed the deceased;

and of the fact that Porter Jones was seen, with a pistol, in the road near the place where Adams had been plowing during the day, before the firing was heard. There was some evidence of tracks at and near the supposed scene of the killing, and evidence that the deceased had killed the defendant's brother. No witness testified that he saw Adams when he received the wound causing his death. The ball that killed him came from a pistol and went through his body, piercing his heart.

The physician did not testify that men never speak after being shot through the heart, but said that they do only in very exceptional cases. It appears from the testimony that this was one of the exceptional cases, as the evidence shows that Adams was shot through the heart, and ten or fifteen minutes thereafter he spoke to his wife about who shot him. Nor did the physician say that it was impossible for the bullet to have entered the body of the deceased from the front, but said that it is only possible that it may have done so, and that "Possibly I may be mistaken as to whether he was shot in the back or front." It may be said that it could not, with much good reason, be contended that Adams would have committed suicide by shooting himself in the back, though an accidental killing by himself may have been caused by the bullet entering from the back. While what is herein said does not mean that the evidence is not overwhelmingly against the theory that Adams did not accidentally or intentionally kill himself, can the court, in a criminal case, in its charge assume that a fact necessary to be proved existed simply because the evidence is overwhelmingly in favor of its existence? "Homicide" is defined in our Penal Code, §59, as follows: "Homicide is the killing of a human being, and is of three kinds—murder, manslaughter, and justifiable homicide." Mr. Wharton in his work on Homicide (3d ed.), §1, gives this definition: "Homicide is the destroying the life or the killing of any human creature; the killing of one human being by another, or by others; or the destruction of the life of one human being by the act, agency, procurement, or culpable omission of another. It embraces every mode by which the life of one person is taken by another." Homicide does not include intentional or accidental self-destruction. Proof of the corpus delicti must be made in every criminal case. In a charge of murder, the corpus delicti necessarily includes an unlawful kill-

ing. Proof by the State that a homicide has been committed, unless there be facts or circumstances negativing malice, raises a presumption of malice and murder—but this presumption only exists when the homicide has been proved. Proof of the corpus delicti alone will furnish sufficient corroboration of a confession, to authorize a conviction. The corpus delicti in a murder case embracing an unlawful killing, a party confessing to the killing of another found dead, or with a mortal wound from which he dies, can not be convicted on such confession alone, where there is no proof of an unlawful killing. In *Schaefer* v. *State,* 93 *Ga.* 177, it is held: "Clear and undoubted evidence of the corpus delicti will serve to corroborate a confession made by the accused." If the declarations of the deceased and the circumstances proved indicating a homicide established a homicide, this fact of itself (independent of any other corroboration of the confession) was sufficient corroboration of the confession made by the defendant to authorize, though not to require, his conviction, because the circumstances proved do not show any justification or mitigation negativing the presumption that the killing was unlawful. Hence, to charge the jury that Adams' death was the result of a homicide—a killing by some one—was equivalent to charging them that "if you believe the defendant made the confessions of killing Adams, you would be authorized to convict him; because I charge you that it is a fact that Adams was killed by some one— he did not kill himself intentionally or accidentally." It may be true that the facts and circumstances, outside of the defendant's alleged confession, are overwhelmingly against the theory that Adams killed himself intentionally or accidentally; but can the judge charge the jury that a homicide was committed, simply because the evidence is overwhelmingly in favor of that theory, when proof that the killing was a homicide is absolutely essential to a conviction? A charge of this nature is error. *Young* v. *State,* 125 *Ga.* 584; Bond *v.* People, 39 Ill. 26; Newton *v.* State (Miss.), 12 So. 560; Brown *v.* State, 72 Miss. 997 (17 So. 278). In the *Young* case, supra, in the opinion (rendered by a majority of the court) it is said: "The court may have been of the opinion that the evidence in the case was overwhelmingly against the defendant on these issues, but such would not have authorized him to withdraw the issues from the consideration of the jury. If the court

could withdraw these issues, there is no principle which would prevent the withdrawal of any other issue in the case. It may as well be said that all issues may be withdrawn; and that where the court thought the evidence demanded the conviction of the defendant, the court could direct a verdict of guilty. It will hardly be contended that this could be done in any criminal case, in the absence of a statute. Certainly it could not be done in a felony case, with or without statute."

The defendant's plea of "not guilty" put in issue every material fact necessary to be proved by the State in order to show that the defendant was guilty of the murder of Adams. One of these facts was that when Adams died, a homicide had been committed. No witness testified that he saw the deceased when he received the wound, and only one wound was received by him, which was a bullet wound piercing the heart. Several times in his charge the court referred to the killing as the "homicide," and in two instances referred to the killing as "this homicide," as appears from the extracts of the charge hereinbefore set forth. In his charge the court said: "If you conclude . . . that the defendants or either of them committed this homicide," and "The defendants in this case deny that they perpetrated this homicide." These charges assumed that a homicide had been committed, and a careful consideration of the charge as a whole fails to disclose that this error could be considered as corrected by the other portions of the charge.

There is nothing whatever in the record showing that the defendant, or his counsel, said or did anything to authorize the conclusion that a homicide was admitted. It is not proper to say that the defendant conducted the case upon the theory that a homicide was committed, or that he conceded it, because of some little things such as some of the witnesses in their testimony using the word "killing," and referring to the fact that Adams was killed. The witnesses did not pretend to know how Adams came to his death. Besides, the language used would as well mean that Adams killed himself as it would mean that he was killed by some one else. It does not appear that defendants' counsel caused these witnesses to use these words; but if he did, it would have too little significance to take away from the defendant the important right

of requiring the State to prove the fact—the important fact—
that a homicide had been committed.

The statement by the court, in his approval of the amended mo-
tion, that "There was no contention on the part of the defend-
ant's counsel that a homicide had not been committed," simply
means that the defendant did not assert this contention, and does
not mean that the defendant admitted that a homicide had been
committed. After entering a plea of "not guilty," which put in
issue the material question as to whether or not a homicide had
been committed, and made it necessary for the State to prove this
material fact, the failure of the defendant to affirmatively con-
tend, on the trial, that a homicide had not been committed would
not warrant the trial judge in assuming that its commission was
thereby admitted. If the trial judge were so warranted, he would
have been likewise warranted in charging the jury that the de-
fendant did the killing, if the defendant, after entering his plea
of "not guilty," had not directly or indirectly renewed the con-
tention involved in such plea that he did not kill Adams; as the
evidence was about as strong to show that the defendant killed
Adams as it was to establish that Adams' death resulted from a
homicide, leaving out, as it is proper to do, any consideration of
defendant's confession as proof of the homicide. It might be
said that as the defendant made no statement denying the killing,
and that as there was uncontradicted evidence of his confession
that he killed Adams, the evidence overwhelmingly and with-
out contradiction showed that the defendant killed Adams, and
that the court would have been justified in charging not only that
the homicide was committed, but also that the defendant com-
mitted it, because he had not, upon the trial, renewed his conten-
tion, involved in the plea of "not guilty," that he did not kill
Adams. If the court were so justified, then, in the absence of
evidence of insanity, or justification, or mitigation, the court would
be justified in directing a verdict of guilty, with power only in
the jury to give or refuse a recommendation. There was evidence
that the defendant confessed to the killing of Adams on the day
that Adams died, by a witness who testified that the defendant,
Porter Jones, said he "saw somebody plowing he thought was
Paul Wells, that spoke to him and asked him why he didn't bring
him some of that good liquor; and that he would not have taken

that from anybody; and that he killed his brother too." The
first and main reason given in this confession was certainly a pe-
culiar one, to say the least of it, for which a sane man would kill
another. The defendant, who offered evidence of insanity, made
no statement to the jury, and the testimony of this confession is
undenied and not here questioned. This testimony,—whether or not
the confession was true, if made, and the evidence of insanity were
all questions for the jury; but no conviction can be had on a con-
fession without corroboration, and no reason or authority need be
offered in support of the proposition that a homicide can not be
proved by a confession and such proof of a homicide considered a
corroboration of the confession which proves it. The dying decla-
ration of Adams, made some 10 or 15 minutes after he was shot
through the heart and just before he died, that he was killed by
Albert Jones (who offered evidence of an alibi and to whom a
new trial was granted), if made because the deceased was not con-
scious of what he was saying, or if for any reason such declarations
were not true, can not be considered as evidence of any value in
showing a homicide; but it is difficult to wipe from the mind the
impressions created by the evidence of the confession and of dying
declarations, in considering the question of a homicide having
been established, though it is necessary that this be done in order
to properly decide the question at issue. It is useless to go into
any extended discussion relative to the absence of evidence as to
whether or not any pistol was found in the field; any ill feeling
between the deceased and Albert Jones, to whom he charged his
murder; the supposition that the deceased was killed by one of
the five or six shots heard; the improbability of an accidental or
intentional self-destruction from one of the shots heard; the opin-
ion of the physician that the only wound made was by a ball en-
tering from the rear, piercing the heart, and making its exit
through the breast; the inexplicable and almost incredible way in
which accidental and intentional self-killings sometimes occur, and
the subsequent conduct of the party destroying his own life. Suf-
fice it to say that the fact that a homicide was committed, when
properly considered in this case, must be deduced as a matter of
inference to be drawn from circumstantial evidence; and while
this evidence may have been such as to convince the trial judge
that it was overwhelmingly in favor of the theory that a homicide

had been committed, yet this remained a question for the jury, and not for the court, to determine. The defendant was entitled to have this important issue, as to whether or not a homicide had been committed, passed on by the jury; and it was a material injury to him to have such issue removed from their consideration, by the assumption by the trial judge in his charge that a homicide had in fact been committed, demanding the grant of a new trial to the defendant.

The disposition of the case, however, is controlled by the view which the majority of the court entertain; and the judgment of the court below is

*Affirmed. All the Justices concur, except Atkinson and Holden, JJ., dissenting.*