PARKER *v.* THE STATE.

No. 14757.   FEBRUARY 12, 1944.

D. A. *Bragg* and W. G. *Neville,* for plaintiff in error.

T. *Grady Head, attorney-general, Fred T. Lanier, solicitor-general, O. Frank Brant,* and L. C. *Groves, assistant attorney-general,* contra.

BELL, Chief Justice. (After stating the foregoing facts.) Hubert Parker was indicted for the offense of murder in the killing of his wife, Mrs. Waldeen Parker, on May 13, 1943, by shooting her with a shotgun. His motion for a new trial as amended was overruled, and he excepted.

■ In the first special ground, it was contended that the court erred in admitting the following testimony of Mrs. Alton Parker: "I said, 'Waldeen,' I says, 'How come Hubert to shoot you?' and she said that Bernice and them told him a whole mess about her and Sid Parker and he shot her; she said she was in the kitchen cooking dinner and doing the best she could. As to whether she made any statement then with reference to it, well you know she asked me had I ever heard of anybody being like that and getting over it; she didn't say anything about thinking that she was going to get over it, she just asked me if I had ever heard of anybody being like she was and living, and I told her, well, I never had heard very much, and it seemed like she was under the impression, I don't know just how to express it, but I tried to encourage her because I was with her when they were cranking the truck. While I was there she said everything was turning black and to get a bucket of water and pour on her."

In the brief for the defendant, it is stated that this evidence was admitted by the court under the rule as to res gestæ, and also upon the theory that it was admissible as evidence of a dying declaration. The defendant objected to it upon the grounds that the declaration to which it related was no part of the res gestæ, and that no sufficient foundation had been laid for admission of evidence of a dying declaration, it being insisted that there was no evidence that the declarant was in the article of death, or, if so, that she was conscious of such condition.

The testimony of the same witness is given more fully in the statement, and from all the circumstances to which she testified, we think it could have been inferred that the declarant was in the article of death and conscious of her condition. As shown by this evidence, the decedent had been shot just above the knee with a shotgun, and was bleeding "terribly." She had just stated to her husband, "You have killed me." She had also stated, "Everything is turning black," requesting that water, a whole bucket full, be poured upon her. The witness further testified that judging from

the nature of the wound, she thought the woman's condition "was very serious, she seemed to think she was going to die;" and she did die within two days.

It is true that the declarant also inquired if the witness "had ever heard of anybody being like I was and living," begged to be hurried to the hospital, and said, "I am ruined for life if I live," but these expressions did not necessarily rebut the other statements and circumstances from which it could have been inferred that she believed she would die. "It is not necessary for the State to show affirmatively that a person who had been shot said he was in a dying condition, in order to admit proof of his declarations, if in point of fact he was in articulo mortis, and the circumstances were such that he must have known that he was in a dying condition." *Washington* v. *State,* 137 *Ga.* 218 (73 S. E. 512). "On the trial of a murder case,. if at the time of making declarations the condition of the wounded person making them, the nature of his wounds, the length of time after making the declaration before he expired, and all the circumstances make a prima facie case that he was in the article of death, and conscious of his condition when he made the declarations, such declarations should be admitted in evidence by the court under proper instructions to the jury." *Green* v. *State,* 154 *Ga.* 118 (7), 137 (3) (113 S. E. 536). Where a statement is susceptible of two constructions, one that the declarant realized he was in a dying condition and the other that he might recover, and where the other circumstances are sufficient to show prima facie that the declarant was in the article of death and conscious of his condition, a declaration as to the cause of his death and the person who killed him is not to be excluded because of such ambiguity. *Bird* v. *State,* 128 *Ga.* 253 (3) (57 S. E. 320). In the instant case, the preliminary evidence was sufficient to establish a prima facie foundation for admission of the testimony of Mrs. Alton Parker as to the statement made to her by the deceased, and the court did not err in admitting the testimony. The ultimate determination as to whether the declarant was in the article of death and realized her condition, was of course a matter for the jury, but it appears from the record that the judge instructed the jury fully as to their province. *Findley* v. *State,* 125 *Ga.* 579 (54 S. E. 106); *Davis* v. *State,* 120 *Ga.* 843 (3) (48 S. E. 305); *Barnett* v. *State,* 136 *Ga.* 65 (4) (70 S. E.

868); *Jefferson* v. *State,* 137 *Ga.* 382 (3) (73 S. E. 499); *Phillips* v. *State,* 163 *Ga.* 12 (2) (135 S. E. 421).

The case differs on its facts from *Whitaker* v. *State,* 79 *Ga.* 87 (3) (3 S. E. 403); *Howard* v. *State,* 144 *Ga.* 169 (86 S. E. 540), and *Roe* v. *State.* 164 *Ga.* 95 (2) (137 S. E. 824), where the statements clearly indicated some hope of recovery. In the instant case, the deceased never did at any time clearly indicate any such hope.

Moreover, in the three decisions which have just been cited, it appears that this court did not take into consideration any preliminary circumstantial evidence, whether or not such evidence may have been presented in the record. Whether correct or incorrect, the rulings in these cases will not be extended. Although the case of *Glover* v. *State,* 137 *Ga.* 82 (2) (72 S. E. 926), was one in which the deceased was shot in the leg with a shotgun, it was stated in the decision that there was "no fact brought out in the evidence which would serve to show that the decedent believed that death was imminent at the time of making the alleged statement." Such an observation could not be properly made in the instant case, in view of the testimony as to the nature of the wound, the state of the decedent's mind, and the other circumstances.

With no exception, to be dealt with in division 2, infra, what has just been said in reference to the testimony of Mrs. Alton Parker will apply also, on principle, to the testimony of all other witnesses as to declarations of the deceased, and will thus control adversely to the defendant the other grounds of the motion for a new trial relating to dying declarations, namely, ground 3, as to testimony of Mrs. E. E. Miller; ground 4, as to testimony of Mrs. Ila Ree Parker; ground 7, as to testimony of E. E. Miller; ground 8, as to testimony of Dugal Newton; and ground 10, as to testimony of Mrs. Ashley Waters. If the foundation was not laid independently in the testimony of each of these witnesses, what had been stated by the first witness, Mrs. Alton Parker, could have been considered as additional preliminary proof. The facts necessary to be shown before declarations are admissible as dying declarations may be proved by evidence as to the nature of the wound and other circumstances, and by witnesses other than those testifying to such declarations. *Oliver* v. *State,* 129 *Ga.* 777 (59 S. E. 900); *Simpson* v. *State,* 168 *Ga.* 598 (2) (148 S. E. 511); *Gibbs* v. *State,* 190 *Ga.* 207 (4) (9 S. E. 2d, 248); *Emmett* v. *State,* 195 *Ga.* 517, 533 (25 S. E. 2d, 9).

As stated above, the decision in *Whitaker* v. *State,* supra, appears to have rested solely upon *statements* of the deceased as to his mental condition, and a different ruling is not required here because of the statement in that decision that testimony of one of the witnesses "threw no light on the question of [declarant's] condition at the time when he made declarations to other persons not then present" It may be observed that the *Whitaker* case has never been cited by this court upon any point, although as to this particular point, there are several later decisions. However, when limited to its particular facts, the ruling there made does not, in any view as to its soundness, conflict with our present ruling.

■ In ground 4, the defendant complained of admission of the following testimony of Mrs. Ila Ree Parker: "I says, 'Waldeen, how in the world come Hubert to shoot you?' and she says, 'Well, he went to the house and was fussing at me, like he always done, and he told me he was going to kill me, and he went in the house and got the gun and come back in the kitchen; I didn't believe he was going to kill me, and he cocked the gun and pointed it on my heart, and I knew then that he meant to kill me, and I knocked the gun and it went in my leg;' and she said, 'He loaded his gun Tuesday morning to kill me and I run and got out of his way then;' and I says, 'Waldeen' — this was Thursday afternoon, and I says, 'Waldeen, do you want us to do anything with him?' and she says, 'Yes,' she says, 'Aline, she told me if I lived that she would see that I never lived with him another day,' and if she died, 'I want you all to have something done with him, that right in my kitchen he loaded his gun Tuesday morning to kill me and I run and got out of his way,' that is just what she said."

The defendant objected to all of this evidence upon the ground that no sufficient foundation had been laid, and objected separately to the part, "I says, 'Waldeen, do you want us to do anything with him?' and she says, 'Yes,' she says, 'Aline, she told me if I lived that she would see that I never lived with him another day,' and if she died, 'I want you all to have something done with him.'" As to this part of the testimony, the objection was as follows: "I want to also ask the court to exclude from the testimony all the evidence given by her as to dying declarations, all evidence given by her except that touching the statement that was made by the deceased now in the record as to how it happened. That part

of the testimony about wanting him prosecuted, and wanting something done with him, and that he didn't expect to live with her . . is irrelevant testimony. The dying declarations and the testimony as to the res gestæ as to what happened at the time the crime was committed and nothing afterwards. Now the statement that she made there about the shooting and about how it happened on the day, I am not offering any objection at this time to that part of it. I have already objected to that, but I ask the court to exclude that part of the testimony for the reason that it is prejudicial and harmful to the rights of the defendant on trial."

It is insisted in the brief that testimony as to what the deceased wanted done with the defendant went beyond the proper scope of evidence of a dying declaration, which should be limited to the cause of the declarant's death and the person who killed him. Code, § 38-307; *Hawkins* v. *State,* 141 *Ga.* 212 (4) (80 S. E. 711); *Harris* v. *State,* 142 *Ga.* 627 (2), 629 (83 S. E. 514).

Assuming that the objection made was sufficient to raise this question, and that the part of the testimony last-above quoted did not as a matter of fact come within the limited purpose for which evidence of such declarations may be admitted, we do not think its admission was such error as to require a new trial under the circumstances appearing. This statement of the deceased was manifestly based upon her previous declaration to the effect that the defendant meant to kill her and had shot her without cause. If that was the truth of the transaction, she expressed no more than what the law itself would declare ought to be done. In the circumstances, it would seem that upright and intelligent jurors must have placed their verdict entirely upon a determination as to whether the defendant did intentionally shoot his wife, as she claimed, without being swayed in the slightest degree by the evidence as to her wish, based solely upon such claim.

From what has been said in this and the preceding division, the court did not err in overruling ground 4 in its entirety.

■ In ground 14, it was contended that the judge erred in failing to charge the jury "that the person in the article of death, although conscious of her condition, must have abandoned and given up all hope of recovery; and that dying declarations were not to be considered as evidence against the defendant on trial unless and until the jury had first determined that the deceased was in the

article of death, conscious of her condition, and had abandoned all hope of recovery; and that dying declarations were never to be and could not be considered as evidence in the case on trial, unless and until the jury was satisfied that all of these requirements had been met." As we have just stated in the first division, it appears from the record that the judge did instruct the jury generally as to their proper function in considering evidence of such declarations, and if a more specific charge was desired, it should have been requested. *Rouse* v. *State,* 183 *Ga.* 551 (2) (188 S. E. 904); *Allen* v. *State,* 187 *Ga.* 178 (7) (200 S. E. 109, 120 A. L. R. 495); *Mitchell* v. *State,* 183 *Ga.* 217 (188 S. E. 3).

In ground 2, it was contended that the court erred in admitting the following testimony of Alton Parker, as to a statement made by the defendant regarding "trouble" with his wife: "Prior to this shooting I had not learned of any trouble between Hubert and his wife except what he himself told me. He was telling me about them having a little trouble, and I asked him if it was anything that he or his wife had done to cause this trouble, and he said it was just some talk that he heard, he hadn't seen anything at all, just some talk that he had heard, and I said something to him. I told him it was a kind of a poor way for a fellow to be doing not knowing at the time whether he was doing right, and if he kept on like that the first thing he knowed his wife would be hurt and they would be in trouble, and after I said what I did to him he said back to me that he wasn't going to bother her any more. On that occasion he made a statement as to how long he expected to live with her; he said he wasn't staying with her any longer than the war lasted, and when the war broke he wasn't staying with her any longer; and he said he damn sure wasn't going to pay no woman any alimony." From other testimony by the same witness, it appeared that this conversation occurred about three months before the shooting.

In grounds 5, 6, and 9, the defendant complained of the admission of testimony of three other witnesses tending to show ill-will and mistreatment on the part of the defendant toward his wife, all during the last few months. The defendant objected in each instance upon the ground that such evidence related to separate and distinct occurrences, and was irrelevant and prejudicial. There is no merit in these grounds. "When a husband is on trial for the

alleged murder of his wife, evidence tending to show a long course if ill-treatment and cruelty on his part toward her, continuing until shortly before the homicide, is admissible. Such evidence tends to show malice and motive, and to rebut the presumed improbability of a husband murdering his wife." *Roberts* v. *State*, 123 *Ga.* 146 (5) (51 S. E. 374). See also, *Beckworth* v. *State*, 183 *Ga.* 871 (190 S. E. 184); *Cobb* v. *State*, 185 *Ga.* 462, 464 (4) (195 S. E. 758).

In ground 11, error was assigned upon a statement made by the judge during the progress of the trial as to the purpose for which certain evidence was admitted. It does not appear that any objection was made to this statement at the time it was made, or at any time until after the verdict in the motion for new trial. Accordingly, this ground presents no question of error for determination. *Pulliam* v. *State*, 196 *Ga.* 782 (6) (7) (28 S. E. 2d, 139).

■ In grounds 12 and 13, it was contended that the court erred in failing to charge the jury that the evidence as to the defendant's previous ill-will toward his wife and his mistreatment of her (see division 4, supra), was admitted solely for the purpose of showing motive, trend of mind, and state of feelings of the defendant, and was not to be considered as evidence of guilt of the accused of the particular offense for which he was being tried. Even if such a charge would have been proper, the mere failure to give it was not error, there being no request. *Holmes* v. *State*, 131 *Ga.* 806 (63 S. E. 347); *Baldwin* v. *State*, 138 *Ga.* 349 (3) (75 S. E. 324).

■ In ground 15, it was contended that the court erred in failing to charge the jury as to the offense of involuntary manslaughter in the commission of an unlawful act, and in grounds 16, 17, and 18, error was assigned upon charges that were given, upon the ground that they excluded such offense, thus preventing the jury from finding a verdict for this lower grade of homicide. While the defendant insisted that the shooting was accidental, and objected to evidence of declarations of the deceased, yet since this evidence was allowed to go to the jury, he insists it would have authorized a verdict for involuntary manslaughter in the commission of an unlawful act, and that the court therefore erred in not submitting this offense.

We can not agree to this contention. In *Epps* v. *State*, 19 *Ga.* 102 (5), 120 (7), it was held that if one makes an attack upon

another with intent to kill, and the gun of the assailant is accidentally discharged, with the result that the other person is killed, the offense is murder. There can be no involuntary manslaughter, where there is an intent to kill. *Smith* v. *State*, 73 *Ga.* 79 (3); *Jackson* v. *State*, 76 *Ga.* 473 (3). In the instant case, the evidence for the State, if true, showed an intentional killing. The defendant's statement was to the effect that it was purely accidental, and there was no intermediate ground. The court therefore properly omitted any reference to involuntary manslaughter in the commission of an unlawful act. *Golatt* v. *State*, 130 *Ga.* 18 (2) (60 S. E. 107); *Drane* v. *State*, 147 *Ga.* 212 (2) (93 S. E. 217); *Goodwin* v. *State* 148 *Ga.* 33 (1) (95 S. E. 674); *Walton* v. *State*, 190 *Ga.* 746 (2) (10 S. E. 2d, 755).

■ In ground 18, the defendant complained of the following charge upon the additional ground, that it omitted the element of intention, and was an erroneous statement as to the shifting of the burden of proof: "That is the definition of murder, and whenever the State establishes beyond a reasonable doubt that the life of an individual has been taken, and it was taken with a weapon likely to produce death, the law presumes malice and the burden is then cast upon the defendant to show that there was no malice, unless the evidence for the State discloses that fact, or the evidence for the defendant discloses that fact. If the evidence for the State, or the evidence for the defendant together with his statement, should disclose that there was no malice, then of course there would be no murder. The crime of murder can not be committed without the ingredient of malice being present at the time of the killing." There is no merit in this ground. *Mann* v. *State*, 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934); *Fitzpatrick* v. *State*, 149 *Ga.* 75 (3) (99 S. E. 128); *Walton* v. *State*, 190 *Ga.* 746, supra; *Thompson* v. *State*, 191 *Ga.* 222 (7) (11 S. E. 2d, 795).

The evidence authorized the verdict, and on careful examination of the record, we are of the opinion that no material error was committed. Accordingly, the judgment refusing a new trial must be                                    *Affirmed. All the Justices concur.*