## BOOTH *v.* THE STATE.

The general rule is, that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible; though to this rule there are certain exceptions. But the evidence admitted in this case, over the objection that it was

irrelevant and immaterial and related to separate and distinct offenses, fell within the general rule and not within any of the exceptions.

No. 4747. APRIL 15, 1925.

Murder. Before Judge E. D. Thomas. Fulton superior court. January 17, 1925.

*H. A. Allen,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general, E. A. Stephens,* and *Ralph H. Pharr,* contra.

BECK, P. J. Plaintiff in error was indicted for murder, the indictment charging that she killed J. L. Arendale by beating him with a blunt instrument. She was tried and found guilty, and sentenced to be executed. The evidence showed that on the 8th day of November, 1924, J. L. Arendale was found in the office of the Patterson Lumber Company, lying on the floor, with his head badly beaten in by some blunt instrument. He was carried to the hospital, where he died shortly afterwards. A desk and two safes in the office of the Patterson Lumber Company were found to be badly battered with what appeared to be a hammer. The evidence showed that the defendant owned a hammer exactly the size of the one which made the prints upon the safes and desk of the Patterson Lumber Company. She owned a sweater in which was found a watch of the decedent. Other evidence was admitted, showing that the defendant had robbed other persons after beating them on the head with a blunt instrument, rendering them unconscious. The defendant made a motion for a new trial, which was overruled, and she excepted.

The court admitted in evidence, over objection duly made by counsel for the defendant, the following testimony of Mrs. J. F. Rogers, a witness for the State: "I recognize the defendant, as having seen her on another occasion at my house. It was on November 4, 1924. She come in the front room without knocking. She wanted to see about sewing, she said. She did not ask for anything, only to see about work, she said. She asked for water, and I went back into the kitchen, and she met me as I come back in the bedroom. She asked me if I had need for any servant. I handed her the water, and told her I hadn't anybody except a washwoman. She took the water; and after she asked me about her helping, I suppose I turned just a little bit, and she

. . After she had got her drink of water, that is when she hit
me. We were in the bedroom then. She hit me right there, right
there, and right there (indicating) ; three licks, all on the side of
my head; and this one right here by my ear. It was on the right
side of my head. There was 75 cents in money on the dresser,
and she got that." The objection urged to this evidence was:
"If your honor please, for the purpose of this record, I object to
this testimony and move to rule it out; that is, that part of the
testimony which has reference to her hitting her on the head and
the getting of the money on the dresser; on the ground that it
shows a separate and distinct crime and does not in any way
illustrate the motive, intention, good or bad faith of this defend-
ant with reference to the particular transaction for which she is
on trial; because the testimony is immaterial and irrelevant, highly
prejudicial to the defendant's case, and is illegal." In overruling
the objection and admitting the evidence, the court stated, "I
admit the testimony for the purpose of, and restrict its considera-
tion by the jury as illustrating, if it does, the question of motive,
intent, and identity." In the motion for a new trial exception is
taken to the ruling of the court admitting this testimony.

Another witness for the State, Max Lichtenstein, was permitted
to testify as follows: "I live at 283 Martin. My place of business
is 296 Woodward Avenue. I saw the defendant there, in my place
of business, on the 31st, Friday of last month. It was five weeks
ago. I opened my place of business about 5:15 in the morning,
and a customer came in to market. I was waiting on this cus-
tomer; he was a neighbor to me; and this woman walked in; this
woman sitting right there; she was the one walked in. I got
through waiting on this customer, and asked this woman what she
wanted. She had her back turned to me. She said I want you.
I asked her again what she wanted, and she said she wanted a
bar of soap; and I walked back in the corner and got the soap, and
she was back of me; and I had the starch on the shelf, and that
fell down, and I stooped down, and when I ducked down to the
floor, I went right over. I must have had hold of something, and
she hit me on this arm, and then I was unconscious. I don't know
what happened; but she hit me here over the eye, and Dr. Davis
sewed the eye up. I don't know what she got from me. I was
lying on the floor unconscious. After I recovered, I missed $24 .

18

out of the display counter, and I had about $4 in my pocket. That is the woman there who did it." This was objected to by counsel for plaintiff in error, upon substantially the same grounds as those urged to the testimony of the first witness quoted; and the judge made a similar ruling upon the objection.

O. D. Davis, a witness for the State, was permitted to testify as follows: "The defendant told me that her and Watson Creed went down there to Mr. Lichtenstein's on Friday morning—I forget the date, and sat down on some steps on Woodward Avenue, there right at this store, until 5:30. He came down to open the store, and she said she got something. She never did come right out and say she knocked him in the head. She said she got his money, $28.00. It was on the 4th of October, is the best of my recollection. I would not be positive about that date. She did not mention any date." This was objected to upon the same ground as urged to the testimony of Mrs. Rogers and Lichtenstein; and the court made the same ruling in regard to this evidence.

We are of the opinion that the court erred in admitting the testimony quoted, over the objections urged. The admission of this testimony was contrary to a well-settled doctrine in criminal cases and numerous rulings of this court announcing that doctrine. In *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016), where it was held that the evidence objected to in that case was admissible, it was said: "As a general rule, evidence of the commission of one crime is not admissible upon a trial for another, where the sole purpose is to show that the defendant has been guilty of other crimes." In the case of *Cawthon* v. *State,* 119 *Ga.* 395 (46 S. E. 897), it was said: "Where one is on trial charged with the commission of a crime, proof of a distinct and independent offense is never admissible, unless there is some logical connection between the two, from which it can be said that proof of the one tends to establish the other. While this rule is general and subject to few exceptions, still there are some exceptions; as, when the extraneous crime forms part of the res gestæ; or is one of a system of mutually dependent crimes; or is evidence of guilty knowledge; or may bear upon the question of the identity of the accused, or articles connected with the offense, or is evidence of prior attempts by the accused to commit the same crime upon the victim of the offense for which he stands charged; or where it tends to prove malice, intent, motive,

or the like, if such an element enters into the offense charged." Mr. Underhill, in his work on Criminal Evidence, states the same general rule and refers to the exceptions to that rule; and, in discussing the exceptions, further says: "These exceptions ought to be carefully limited and guarded by the courts, and their number should not be increased." § 151. And further: "But no separate and isolated crime can be given in evidence under this exception to the rule. In order that a collateral crime may be relevant as evidence, it must be connected with the crime under investigation as part of a general and composite transaction." § 152. In 1 Wigmore on Evidence we find the following: "This principle has long been accepted in our law. That 'the doing of one act is in itself no evidence that the same or a like act was again done by the same person' has been so often judicially repeated that it is a commonplace." § 192. And again he says, as to reasons for the rule: "It may almost be said that it is because of this indubitable relevancy of such evidence that it is excluded. It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge." Mr. Wigmore cites and quotes from a very large number of cases laying down the doctrine stated in this text, and it may not be unprofitable to quote from some of those cases here.

"It is a general rule that a distinct crime, unconnected with that laid in the indictment, can not be given in evidence against a prisoner. . . Logically the commission of an independent offense is not proof in itself of the commission of another crime." Shaffner v. Com., 72 Pa. 65 (13 Am. R. 649). "That a person has committed one crime has no direct tendency to show that he committed another similar crime which had no connection with the first." Miller v. Curtis, 158 Mass. 127, 129 (32 N. E. 1039, 35 Am. St. R. 469). "It is an elementary principle that the commission of one crime is not admissible in evidence to establish the guilt of a party of another." People v. McLaughlin, 150 N. Y. 365, 386 (44 N. E. 1017). "You know the case lately adjudged in this court; a person was indicted of forgery; we would not let

them give evidence of any other forgeries but that for which he was indicted, because we would not suffer any raking into men's course of life to pick up evidence that they can not be prepared to answer to." Hampden's Trial, 9 How. St. Tr. 1053, 1103. "We can not enter into a collateral question as to the man's having committed a crime on some former occasion, one reason being that it would lead to complicated issues and long inquiries; and another, that a party can not be expected to be prepared to defend the whole of the actions of his life." Attorney-General *v.* Hitchcock, 1 Ex. 93. "Place a person on trial upon a criminal charge, and allow the prosecution to show by him that he has before been implicated in similar affairs (no matter what explanation of them he attempts to make), it will be more damaging evidence against him and conduce more to his conviction than direct testimony of his guilt in the particular case. Every lawyer who has had any particular experience in criminal trials knows this,—knows that juries are inclined to act from impulse, and to convict parties accused, upon general principles." State *v.* Saunders, 14 Or. 300, 309 (12 Pac. 441). Numerous other authorities to the same effect might be quoted. They can be easily found by references made in the two text-books which we have cited above.

Counsel for defendant in error, however, contends that the ruling of the court below upon the question of the admissibility of this evidence was not error, and relies largely upon the cases of *Frank* v. *State,* supra, *Williams* v. *State,* 152 *Ga.* 521 (110 S. E. 286), *Coart* v. *State,* 156 *Ga.* 536 (119 S. E. 723), and certain others. Those cases, however, are not controlling upon this question. There was an essential difference in the facts of those cases and the facts of the present case, and stronger ground for admitting the evidence complained of than there is in the instant case. In the *Frank* case it was said, in discussing the evidence admitted over objection, which related to former criminal acts of the accused: "So, in the case before us, there was no eye-witness to the crime, and the evidence under discussion tended to show a lascivious motive on the part of the accused, which had several times in the near past been exhibited at that place, and under like circumstances of watching and signaling, and from the effort to act upon which, at the same place, on this occasion, and resistance thereto, the murder may have resulted. . . There was no ques-

tion that the girl was killed, and that her body was found in the factory of which the accused was the superintendent. There was evidence from which the jury could find that the killing occurred on the second floor, on which was located the office where the accused admitted that he was when the girl entered the building, went to the office and spoke to him. There was also evidence from which it might be inferred that the person who committed the crime sought to have some character of sexual relation, natural or unnatural, with the girl. Practically all other persons were eliminated from suspicion except the accused and Conley, the leading witness for the State. The accused was a white man, married, and superintendent of the factory. The witness was a negro employee who admitted that he drank intoxicating liquors. Naturally it would be urged with great earnestness to the jury that there could be no possible motive why the accused should kill one of the employees of the factory, and that it would be improbable that he would indulge in lechery in his office or in his place of business, while the negro sweeper would be more likely to do so. Thus the question, not whether some unknown criminal had a lecherous motive which might lead to the effort to accomplish it upon the girl, and, upon her resistance, then to murder, was vitally involved. The question would naturally be asked, what motive was there to prompt the accused to commit the act? The evidence tended to show a practice, plan, system, or scheme on the part of the accused to have lascivious or adulterous association with certain of his employees and other women at his office or place of business, in which place the homicide occurred. Some of these acts were shown specifically to have occurred not long before the homicide, and others must have taken place at no great distance of time, because Conley was only employed at the factory a little more than two years. It tended to show a motive on the part of the accused, inducing him to seek to have criminal intimacy with the girl who was killed, and, upon her resistance, to commit murder to conceal the crime. There was not only evidence of the practice of the accused with other women, but during the trial there was also introduced evidence tending to show that in pursuance of his general practice he made advances toward the deceased." The discussion of the ruling in the *Frank* case shows the ground upon which the

majority of the court based their holding that the admission of the evidence in that case was not error.

In the *Williams* case, supra, it was held: "The general rule is, that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible; but to this rule there are several exceptions. Among them is the admissibility of evidence showing or tending to show the commission of crimes other than that for which the accused is on trial, for the purpose of showing motive, plan, or scheme. *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016), and authorities on the subject referred to in both the majority and minority opinions; *Hill* v. *State,* 148 *Ga.* 521 (97 S. E. 442) ; 12 Cyc. 405, 410; 1 Michie on Homicide, 714, § 166, Id. 843, § 172. The contention of the State is that the testimony of the witness Manning as to the other homicides was properly admitted, because it tended to establish the motive of the defendant, and supply evidence of the scheme adopted by him to carry that motive into effect; that his motive was to destroy the lives of those persons who could, in his opinion, be used as witnesses to establish his own guilt, or that of his sons, of peonage or murder; and having formed the motive to secure himself from danger of this character, it became necessary, in order that his security might be complete, that every such person answering to the description of stockade laborers should be killed; that one of such persons was as dangerous to him as another, and to kill one and leave the others alive would be a useless task. Therefore, that the motive might be, if put into execution, entirely effective, it involved the scheme of killing every person answering to the description of a possible witness against him for peonage; and if this method of destroying testimony was to be effectual, it was to be executed as promptly as opportunity and other circumstances of secrecy might afford. Upon this theory of the State's case the testimony complained of in these grounds of the motion was properly admitted." And the discussion from which this extract is taken brings out clearly the facts which made the evidence complained of admissible for the purpose of showing motive, thereby bringing that case within the exception to the general rule.

In the case of *Coart* v. *State,* supra, it was held: "As a general

rule, evidence which shows or tends to show that one accused of crime has committed another offense wholly independent from the crime for which he is on trial is irrelevant and immaterial. There are exceptions to this rule; among them is that evidence showing or tending to show the commission of crime other than that for which the accused is on trial may be admitted for the purpose of showing motive, plan, or scheme. Under the foregoing exception, evidence to the effect that the defendant, who was accused of the crime of murder, had kissed and embraced the wife of the deceased at his home five months prior to the killing, and this was followed later by professions of affection and an effort to get the wife of the deceased to write to him, as well as by visiting her, as well as the fact that the attentions of the accused were continued until the evening of the day before the deceased was mortally wounded by the defendant, and that during that evening the defendant endeavored to make love to the wife of the deceased, and depreciated and bemeaned his own wife, and asked the wife of the deceased to promise him that if she was ever free she would let him know it, was relevant to the question of motive, and might be of some probative value as 'tending to show' that the defendant's motive for killing the deceased was the desire to possess his wife. The probative value of the circumstances indicating motive is a question for the jury; but 'it has long been the rule in this State, when the admissibility of evidence is doubtful, to admit it and leave its weight and effect to be determined by the jury.' *Goodman* v. *State*, 122 *Ga.* 111, 118 (49 S. E. 922); *Mitchell* v. *State*, 71 *Ga.* 128; *Hornsby* v. *Jensen*, 12 *Ga. App.* 696 (78 S. E. 267)." In the *Coart* case it will be seen from the statement of the facts upon which the ruling was made that the evidence objected to was admissible for the purpose of showing motive. And speaking for myself, it was so clearly admissible for that purpose, that there could be no doubt as to its admissibility. But Chief Justice Russell, who delivered the opinion in that case, said, of evidence which tended so strongly to show motive: "The writer confesses to some doubt as to the propriety of admitting the proof of the alleged assault upon Mrs. McNiece. Five months elapsed between the advances and the homicide. At an earlier period in our jurisprudence the circumstances would have been considered too remote to be submitted to the jury. However, the trend of modern jurisprudence

does not exclude proof of other crimes or of other circumstances which tend to show intention or motive. If the testimony as to the meeting at Coart's house, when Mrs. McNiece, intending to visit Mrs. Coart, found Coart alone at home, be admissible, the remaining circumstances to which the witness testified, being far more proximate in time and circumstance, would also be admissible; and we shall therefore consider the admissibility of the testimony as to the meeting in May, as judged by the rulings of this court. It is of course fundamental that motive for a homicide, or any other crime for that matter, may be shown. In homicide it is not necessary in the first instance for the State to show motive; for if a felonious killing is shown, it is presumed to have been done with malice. However, it was a right of the State to show, if it could, that the intention to kill in the particular case at bar was based upon some master motive."

Other cases decided by this court and cited by counsel for defendant in error can also be differentiated upon their facts. We are satisfied that the admission of testimony which forms the basis of several grounds of the motion for a new trial was error. The former offenses which the objectionable testimony tended to show the defendant had been guilty of were not in any way connected with the offense for which she was on trial, and, so far as we can see, do not tend to identify her. It is true that Mrs. Rogers and Lichtenstein testified that they had been hit with a blunt instrument and had been robbed by the prisoner. If evidence like that can be admitted in this case to show motive or establish identity, then in a case where a person is on trial for murder and it is charged that the decedent in the case was slain by a shot from a pistol or thrust with a knife, it would be competent to prove that the accused on some other occasion had feloniously assaulted another by shooting him with a pistol or by stabbing him with a knife. As pointed out by Mr. Wigmore, such evidence as that does, as a matter of fact, have some relevancy to the crime with which the man is charged, but that very relevancy makes it dangerous and makes it objectionable. It is objectionable, as pointed out in the cases cited above, on the ground that it injects extraneous issues into the trial of the case and permits the prosecutor to bring in charges of which the defendant has had no notice, for the defense against which he is not prepared.

Having held that the admission of the evidence objected to was error, it is unnecessary for us to discuss the part of the charge complained of, for the purpose of that charge was to limit the jury in its consideration of the objectionable evidence to the specific purposes for which the court had held it admissible.

As the case is to be tried again, no opinion is expressed as to the evidence.

*Judgment reversed. All the Justices concur, except Atkinson and Hill, JJ., dissenting.*

GILBERT, J., concurs in the result.