## ROUNDS *v.* THE STATE.

No. 8511.  FEBRUARY 9, 1932.

310

*Robert E. Brown,* for plaintiff in error.

*George M. Napier, attorney-general, Charles H. Garrett, solic-itor-general,* and *T. R. Gress, assistant attorney-general,* contra.

ATKINSON, J. ■ "In the trial of a murder case, if at the time of making declarations the condition of the wounded party making them, the nature of his wounds, the length of time after making the declarations before he expired, and all the circumstances make a prima facie case that he was in the article of death and conscious of his condition when he made the declarations, such declarations should be admitted in evidence by the court, under proper instructions to the jury." *Jones* v. *State,* 130 *Ga.* 274 (2) (60 S. E. 840); *Perdue* v. *State,* 135 *Ga.* 277 (8)

(69 S. E. 184); *Jefferson* v. *State,* 137 *Ga.* 382 (3) (73 S. E. 499); *Coart* v. *State,* 156 *Ga.* 536 (3) (119 S. E. 723); *Benton* v. *State,* 158 *Ga.* 41 (122 S. E. 775); *Hill* v. *State,* 161 *Ga.* 188 (129 S. E. 647); *Faulkner* v. *State,* 166 *Ga.* 645 (144 S. E. 193). The evidence tended to show that the deceased was stabbed with a knife about nine o'clock in the morning of October 28, 1930, and died about seven o'clock in the evening of the same day; that the physician saw him about thirty minutes after the wounds were inflicted, and that the alleged dying declaration referred to in the first special ground of the motion for a new trial was made about two hours later and after the wounds had been dressed. The physician testified, in part: "I found him in the room . . on the floor. He was very bloody from head to foot. He was stabbed. He was extremely weak and very much depressed. He had suffered a great loss of blood and he manifested physical exhaustion. He was perfectly conscious. He was suffering from shock and diminished vitality. He was stabbed right half way between the elbow and wrist on the back of the arm. . . Another wound was in the back on the left shoulder blade, which was a superficial wound. The other wound was on the right side between the 7th and 8th rib on the back, which penetrated the lung. . . In examining him I used my finger as a probe of the wound in the back and as soon as my finger entered the lower wound there was a gush of blood out of the wound, . . and when he breathed the blood bubbled out showing it had penetrated the lung. . . I saw there was very little chance for him to recover. His skin was frigid and very cold, and his respiration was 36 or 38, whereas normal is about 20. He practically had no pulse at all. I just could feel it, which indicated to my mind shock and loss of blood. I would say he was practically in a dying condition. . . I asked him not to talk, and he asked me, 'Am I bad hurt?' and I says, 'Yes,' and he asked me what chance have I to get well, and I told him his condition was very serious and he had possibly 5 chances in 100. . . He said he didn't think he had 5 chances in a 100 to get well, . . that he didn't think he had hardly any chance to get well." The judge did not err in admitting the evidence over the objections stated.

Complaint is made, in the second special ground of the motion for a new trial, of an excerpt from the charge to the jury

on the subject of dying declarations as set forth in the statement of facts; and the third, fourth, and fifth special grounds of the motion complain of failure to charge on that subject as therein set forth. The charge given on the subject was: "Dying declarations made by any person in the article of death, who is conscious of his condition as to the cause of his death and the person who killed him are admissible in evidence in a prosecution for a homicide. Evidence has been introduced in this case as to certain statements alleged to have been made by the deceased shortly before he died. Now, where statements are made by a person shortly before he died, who is in a dying condition, and knows he is in a dying condition, those statements may be detailed to a jury as evidence. Now, in this case, a witness has testified in reference to alleged dying statements. Now, if you believe the deceased made the statements that the witness has detailed to you, and that he really was in a dying condition, then you would consider those statements; that does not mean you are to consider them as necessarily true, but you will consider them as evidence along with the other evidence, and you will give those statements the benefit of such credit as you think they are entitled to, just as you would the testimony of any witness who swears to his testimony on the stand. Of course, a man who makes a dying statement may make a mistake, his testimony may not be true, but you accept it as though it was sworn to before you just as any witness would swear the same thing who claimed to know the same facts. You are the judge in reference to dying statements, you the [are?] to judge whether he was in a dying condition at the time he made the alleged statements, and whether he knew he was in a dying condition, in articulo mortis. If you do not believe he was in a dying condition, you would not accept the statements as evidence. If you do not believe he knew he was in a dying condition, you would not consider the evidence; but you only consider the evidence in case you believe that they were made, and that they were made by him when he was in near approach of death, and he knew at the time he made the statement [that] he was in articulo mortis, or in the article of death." When considered in connection with those portions of the charge which preceded and those portions which followed the excerpt from the charge upon which error was assigned, there was no merit in that assignment of error.

■ There is no merit in any of the other special grounds of the motion for a new trial. The evidence was sufficient to support the verdict, and the judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*