24850. BERRY *v.* THE STATE.

DECIDED JUNE 22, 1935.

*Etheridge, Belser, Etheridge & Etheridge,* for plaintiff in error.
*John A. Boykin, solicitor-general, J. W. LeCraw, E. A. Stephens,*
contra.

GUERRY, J.   T. R. Berry, Olin Smith, and M. L. Craddock were
jointly indicted, charged with the offense of attempt to commit
robbery by intimidation.   Each of them was charged with having
been convicted of certain described felonies theretofore.   It was
alleged that "T. R. Berry, previous to committing the above de-
scribed offense, had been convicted and sentenced for a felony, hav-
ing been convicted, January 27, 1926, in Fulton superior court,
indictment No. 25310, of the offense of murder, a felony; the
charge being that he did in said County of Fulton, unlawfully and
with malice aforethought, kill and murder one W. H. Cheek by
then and there shooting him with a pistol, upon which conviction
the accused was sentenced for a felony."   Olin Smith had pleaded
guilty to the charge, and M. L. Craddock had been found guilty by
a jury.   After the jury had been impaneled in the trial of Berry,
they were sent out of the room on motion of his counsel, and the
following motion was presented:   "Now comes the defendant, T.
R. Berry, and after pleading not guilty to the offense charged in
the foregoing indictment, and in the absence of the jury impaneled
to try the said case, and moves the court as follows:   (1)   De-
fendant admits that he is the same T. R. Berry referred to in said
indictment as having been previously convicted and sentenced for
murder, and defendant admits that he was in 1926 convicted of the
murder of W. H. Cheek, and that on such conviction he has served
in the penitentiary of the State of Georgia until in 1933 he was
duly pardoned by the Honorable Eugene Talmadge, Governor of
the State of Georgia.   (2)   · Defendant admits that, in view of the

facts and admissions made above, in the event of a verdict of guilty in the within case, the maximum sentence therefor, to wit, not less than four nor more than four years in the penitentiary, is mandatory. Wherefore defendant prays and moves that such portion of the indictment in the within case as refers to his previous conviction and sentence be stricken and so covered by pasting blank paper thereon, or in other manner obliterated as to be invisible to the jury impaneled to try the within case; and further that the judge shall charge the jury in the within case that in the event they find the defendant guilty, they shall fix his sentence at not less than four nor more than four years in the penitentiary, and that all evidence in anywise appertaining to defendant's former trial, conviction, or sentence be excluded."

The evidence for the State disclosed that on the morning of Friday, April 27, 1934, W. M. Gilleland drove his car to the Fulton National Bank of Atlanta on Marietta street, parked his car in front of the bank, and went inside to get the pay-roll for his employer. He drew $368 from the bank and had it in a sack or bag. Coming out of the bank he put the money in the car on the front seat. When he first parked his car he noticed a green sedan car parked beside him, occupied by three men. When he came back out of the bank two were in the car and the third man walked around to get into the car parked beside his own. Gilleland got into his car, backed out from the curb, and drove down Marietta street across Five Points and down Decatur to Pryor street, where he turned south along Pryor crossing to Wall street, and across Alabama street until he came to Hunter street, where he was halted by a red traffic light. A policeman standing in front of the Fulton National Bank testified that the car containing the three men backed out immediately behind Gilleland's car and followed it down Marietta street. When Gilleland stopped at the red light at the intersection of Pryor and Hunter streets, two cars were between him and the car containing the three men. One of the men, later identified as Olin Smith, got out and went to Gilleland's car and stepped in and ordered him to "move over," holding the steering-wheel with one hand and in the other holding a 45 Colt automatic pistol. Smith stuck the pistol in Gilleland's side when he ordered him to "move over," and Gilleland immediately struck Smith with one hand and grabbed the pistol with the other, and they both

struggled out of the car into the street and across the street, Gilleland in the meantime shouting for help. The struggle continued for some time, but no one came to his aid. The green car which had been parked at the Fulton National Bank and which had brought Smith to this scene drove on down to the corner of Hunter and Pryor street, and there the door was opened and Smith jumped in, and the door was closed, and the car turned up Hunter street going at a very fast speed. Gilleland had taken the pistol from Smith and Smith had been unable to get the sack of money which was in the car. Gilleland did not recognize the other two men in the car besides Smith. The officer in front of the bank recognized Smith and Craddock, but was unable to identify the third man in the car, other than that he was a clean-shaved young man. The same afternoon the green automobile used by the three men was recovered abandoned over near the Terminal Station. This car was the property of T. R. Berry, the defendant. Two or three days after the attempted robbery the police officers obtained from the defendant's father a letter postmarked in Atlanta and addressed to Mrs. J. M. Berry, the mother of the defendant, dated April 27, the day of the crime, as follows: "Dear Mother:—No doubt you will be glad to hear from me. Ge, I have experance something that I have never before. I was going down Blvd. to see a girl when too men stopt me. And made me drive to a bank on Marietta St. Then they said to follow a ford So there was nother else for me to do But to do so as they said, as they had too guns on me. Well one man got out and tryied to hold up a man in a ford. The other man sat beside me with a gun on me. So when they fail to get their man they made me drive to the railroad. So tell Dad to go to the Terminal Station and look for his car. They have promise to let me go as soon as they get out of town So I will let you hear from me as soon as I can Please tell Dad not to say anything about this until you hear from me again. Because they are nice to me. And I think I will be alright soon. We leaf the car. And they made me go with them to the Apt. They are watching me write this letter So don't worry because I will let you hear from me as soon as I can. Always, Your son, Theo Berry. P. S. Please tell Dad not to say anything to any one. Will let you hear from me as soon as I can. Always, Theo Berry." A number of witnesses, after being shown a bond and other writings executed by

the defendant, on comparing them to the letter testified that the letter was written by Berry. Berry, some weeks after the crime, was arrested in Pensacola, Florida, and Smith was arrested in Mobile, Alabama. Other evidence for the State showed that on the Sunday preceding the robbery on Friday, Berry, Smith, and Craddock were together in an apartment in Atlanta. The defendant in his statement admitted that he had been convicted of murder and had served seven years, but was paroled, and then pardoned in 1933. He admitted that the automobile was bought by him, and that he was with Smith and Craddock on the Boulevard in Atlanta. He had known Smith while he was serving his sentence, Smith being confined with him. He also stated that they all were drinking, including Craddock's wife. Smith asked defendant if he could borrow his car and go and get some more whisky. This was about 9:30 the morning of the robbery. Defendant says that he dropped off to sleep, and about two o'clock Smith came back and told him about the robbery and said that he had a couple of friends with him. Defendant stated that he knew suspicion would be cast upon him, and that Smith promised to tell the truth about it and absolve him from blame. He claimed to have told his father of his trouble, and while he was waiting for Smith to "tell the truth," he and Smith took a train to Jacksonville, Florida, and then returned to Atlanta and went to the hotel. They went to Chattanooga, and then back to Florida, and then to Mobile, where Smith made plans to commit another robbery or burglary. Defendant left Mobile and went to Pensacola, where he was arrested and brought back to Atlanta. He denied writing the letter above quoted, and denied knowing anything about the attempted robbery until it was over, although he admitted that it was his car which was used by Smith and Craddock. Defendant denied his identity when he was arrested in Pensacola, and claimed his name was Evans.

■ It is insisted, inasmuch as the plaintiff in error came in before trial and admitted in writing the fact of his former conviction of a felony as alleged in the indictment, and as he conceded that if the jury should find him guilty of the charge the judge should instruct them as a matter of law that he should receive the maximum punishment, to wit, four years, that it was error for the court to fail to have such part of the indictment stricken and concealed from the jury, and to allow evidence to go before the jury in

support of this allegation in the indictment, that such allegation and such proof were highly prejudicial, and that in view of his admission in writing in open court it was not necessary. The Code of 1933, § 27-2511, provides: "If any person, who has been convicted of an offense and sentenced to confinement and labor in the penitentiary, shall afterwards commit a crime punishable by confinement and labor in the penitentiary, he shall be sentenced to undergo the longest period of time and labor prescribed for the punishment of the offense of which he stands convicted." In *Mc-Whorter* v. *State*, 118 *Ga.* 55 (44 S. E. 873), Mr. Justice Lamar said: "The plaintiff in error insists that the maximum penalty . . could not be legally imposed on him, as the fact of the former conviction was not set out in the indictment, and found by the jury. Where the second conviction changes the grade of the offense, or authorizes a higher penalty than could otherwise have been imposed, the former conviction enters as an element into the new offense, and must be alleged as a necessary part of the description and character of the crime intended to be punished. . . In mercy to the defendant the law will not require the first conviction to be set out in the indictment, or allow it to be proved. Such allegation and proof would naturally tend to his prejudice. It would in effect tend to prove bad character, a fact which the law will not ordinarily allow to be shown unless the defendant himself tenders the issue." It was further said that "The court after conviction may satisfy himself by an inspection of the previous record, act on his own knowledge, or hear evidence to satisfy himself as to the identity of the person. In this manner the purpose of the law may be subserved without multiplying the issues and embarrassing the defendant on his second trial." It was thus held in that case that it was not necessary to allege in the indictment or prove before the jury the fact of a prior conviction. However, it will be called to mind that when this decision was made, the indeterminate-sentence law had not been passed, and that the fixing of the punishment was a matter left to the sound discretion of the trial judge within the limits fixed by the statute; provided, however, that when a conviction was had against a defendant who had already been convicted and sentenced for a felony, the judge must fix the maximum penalty. Under the indeterminate-sentence law, this discretion is taken away from the judge, except in cases where a plea of

guilty is entered, and the extent of the punishment is left to the discretion of the jury. In *Harris* v. *State*, 40 *Ga. App.* 228 (149 S. E. 153), it was held that where a former conviction is not charged in the indictment nor proved by the evidence submitted to the jury, the court may not fix the punishment at the maximum for the crime charged. In *Tribble* v. *State*, 168 *Ga.* 699 (3) (148 S. E. 593), it was said that the fact of a former conviction must be charged in the indictment where a second conviction would affect the grade of the offense or require the imposition of a different punishment. Where it is necessary to allege a fact in an indictment, it must necessarily be proved. *Hines* v. *State*, 26 *Ga.* 614. Attention is called to the fact that the *McWhorter* case is cited as authority for the ruling made in the *Tribble* case. As pointed out above, the *McWhorter* case was authority for the contrary principle at the time it was rendered, by reason of the fact that the judge then might exercise his discretion.

The point is made, however, in the present case, that, despite the fact that under the present law it is necessary to allege and prove the conviction of a prior felony, the offer in writing by the defendant admitting the truth of such allegation and agreeing that the judge might charge the jury that in the event of a conviction under the instant charge they should fix the maximum penalty prescribed obviated the necessity of alleging or proving that fact, and entitled the defendant to have such allegation striken, and should have prevented the introduction of testimony in support thereof. We recognize the fact, as stated by Justice Lamar in the *McWhorter* case, that such an allegation in the indictment and proof thereof submitted to the jury would naturally tend to the prejudice of the defendant, as it would tend to prove his bad character. It is unquestionably true that evidence of facts which in themselves are relevant to the guilt of the accused is not inadmissible because the defendant admits or offers to admit such facts. The right of the State to introduce such evidence can not be taken away by such offer or admission. 16 C. J. 562; *Currie* v. *State*, 159 *Ga.* 775 (126 S. E. 835); 91 A. L. R. 1478. It becomes pertinent to inquire whether or not the prior conviction and sentence are relevant or a part of the offense of which the accused is being tried. "As a general rule, in prosecutions under statutes authorizing a more severe penalty to be imposed upon a conviction for a second or

subsequent offense, the fact of the former conviction is regarded as a part of the description of the offense, and therefore must be alleged in the indictment or information, in order to authorize the infliction thereof." 16 C. J. 1342. There are authorities, however, holding to the contrary rule. In § 3164 of the same volume it is said: "Where it is necessary to allege and prove the fact of former conviction in order to authorize the imposition of a more severe penalty upon subsequent conviction, it has been held that the admission of a prior conviction by defendant before the selection of a jury does not relieve the State from the obligation to prove such fact, as there is no authority for a defendant to admit part of a criminal charge and deny the rest; and therefore it is proper to permit such fact to be proved at the trial." See, in this connection, People v. Sickles, 156 N. Y. 541 (51 N. E. 288); State v. O'Neill, 76 Mont. 526 (248 Pac. 215). A different rule seems to apply in Wisconsin. Howard v. State, 139 Wis. 529 (121 N. W. 133). However, there it appears that the statute provides that the accused may admit this allegation on the trial. No such exception is made in the Georgia statute. It appears from what has been said that the prior conviction is an element of the second crime so far as the degree of punishment is concerned, and as such our statute authorizes no special plea of guilty as to this feature of the case, although the effect of the charge and the proof may be to put the character of the defendant in evidence. In the *Harris* and *Tribble* cases, cited supra, the principle was invoked for the protection of the defendants in those cases; and it was held that the former conviction must be alleged and proved, and a failure so to do prevented the infliction of the maximum penalty as a matter of law. If the trial judge, under the indeterminate-sentence law, is without authority to exercise his power to act because of any knowledge which comes to him with reference to a prior conviction, and this right to fix the penalty in felony cases tried before a jury is vested alone in the jury, an admission made to the court is not an admission made to the jury; and for that reason it was not error to deny the motion of the defendant to exclude proof substantiating this allegation. The court in the trial of the case stressed at great length and with extended repetition the principle that the sole purpose of the introduction of the indictment and verdict in the prior felony case, was to prove a former conviction as affecting

450

the penalty in case of a conviction in this case, and was not under any consideration to be taken into account by the jury as affecting the character or guilt of the accused in the case on trial. This seems to be the extent of the defendant's rights.

As to the general grounds we think little need be said. The evidence already set out in this opinion speaks for itself. We fully recognize the rule that in cases of circumstantial evidence the circumstances must exclude every other reasonable hypothesis than that of the guilt of the accused. However, the conviction does not seem to depend entirely on circumstantial evidence; for the jury might well have considered the letter written by the defendant to his mother as an admission of his participation in the crime, although he at the same time tried to justify himself as having been forced at the point of a pistol to participate in it. However, conceding that the verdict is based entirely on circumstantial evidence, we can not say that it was insufficient. The many circumstances of the case seem to cast more than a strong suspicion on the defendant.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*