SISK, *alias* SHAW, *v.* THE STATE.

No. 11112.   MAY 12, 1936.

*Harwell & Barrett*, for plaintiff in error.

*M. J. Yeomans, attorney-general, John A. Boykin, solicitor-general, J. W. LeCraw, B. D. Murphy,* and *E. J. Clower,* contra.

BELL, Justice.   S. W. Sisk was convicted of the offense of murder, without a recommendation, and was sentenced to be electrocuted.   He filed a motion for a new trial, which was later amended by the addition of fourteen special grounds.   The motion was overruled, and he excepted.   There is no contention that the evidence did not support the verdict; and the only questions for decision are those raised by the special grounds of the motion for a new trial. Sisk was jointly indicted with Marvin Honea and Sam Daniel.   The indictment charged that the defendants did kill and murder one David Lord on December 20, 1934, by shooting him with a pistol. The evidence showed the following:   The killing occurred about the hour of 7 o'clock on that date, at a filling-station operated by a man named Rakestraw.   The defendants went to this station in an automobile for the purpose of robbing Rakestraw.   Daniel remained in the car while Sisk and Honea went into the filling-station office, armed, and committed the robbery as intended.   During its commission Honea shot and killed David Lord.   The deceased was not connected with the business of this filling-station, but had merely stopped there to wait for another person with whom he would go to his work.   He was shot because, having his hands in his pockets, he could not raise them quickly when ordered to do so. He was shot in the abdomen, and died in a hospital about four days later.

Special grounds 1, 2, and 3 of the motion for a new trial complained of the admission of testimony of three witnesses respectively, to the effect that this defendant and the same Honea held up and robbed a filling-station operator about four and a half miles

"this side" of Winder, Georgia, on the night of December 13, 1934. Ground 4 assigned error upon the admission of the testimony of a merchant, to the effect that the same two, Sisk and Honea, with another person whom he did not identify, robbed the witness in his place of business on Mangum Street in Atlanta on December 14 or 15, 1934. Ground 5 assigned error upon the admission of the testimony of a police officer that the merchant just referred to later came to the jail or prison-house and identified Sisk and Honea as two of the persons who had robbed him, and that Sisk "kidded him" because they got more money than the merchant thought he had lost. The testimony set out in these five grounds was objected to in each instance, upon the ground that it related to separate and independent crimes, and was irrelevant and prejudicial. There is no merit in any of these assignments of error. David Lord was killed in the commission of a robbery on December 20. The evidence showed that Sisk and Honea were the actual perpetrators of that crime. The evidence objected to showed that these two individuals committed two previous robberies within a period of about a week. It tended to establish that they had engaged in a series of robberies within a short period, and that all were perpetrated in pursuance of a conspiracy on the part of the defendant and his companion or companions to commit robberies, including in its scope the particular robbery in which the deceased was killed, and corroborated the other evidence of the defendant's participation in such robbery. As against the objections presented, all of the testimony was admissible under an exception to the general rule as to excluding evidence of other crimes or transactions. *Morris* v. *State*, 177 *Ga.* 106 (4) (169 S. E. 495); *White* v. *State*, 177 *Ga.* 115 (3) (169 S. E. 499).

In ground 6 it was complained that the court erred in admitting the testimony of a different witness, to the effect that he was robbed near his apartment on Juniper Street in the City of Atlanta at 12:30 a. m. on December 20, 1934. This robbery was committed by two persons who accosted the witness and caused him to get into an automobile with them. They carried him several blocks, and after robbing him returned and put him out a short distance from his home. The witness identified the defendant Sisk as being one of those who committed this offense, but testified that he would not recognize the other man if he saw him. The evidence

concerning this robbery was objected to on grounds similar to those referred to above. The court did not err in admitting the evidence. This robbery was committed only a few hours before that in which David Lord was killed. While the witness testified that he could identify only the defendant Sisk, there was other evidence sufficient to authorize the inference that if Honea was not in fact "the other man" he was concerned as an accomplice in this offense. The evidence was therefore admissible under the principle just applied to grounds 1 to 5, inclusive. But, even if the defendant was not aided by any person shown to have been connected with him in the other robberies, the evidence was still admissible as showing the defendant to have been engaged in a series of crimes of like nature within a short period, all inspired by a common intent, and thus to establish motive and to identify the defendant as one of the persons engaged in the conspiracy to commit the robbery which resulted in the killing of David Lord. *Fairfield* v. *State,* 155 *Ga.* 660 (3) (118 S. E. 395); *Green* v. *State,* 172 *Ga.* 635 (3) (158 S. E. 285); *Wilson* v. *State,* 173 *Ga.* 275 (2) (160 S. E. 319).

■ The evidence referred to in grounds 1 to 6, inclusive, was introduced before the defendant made his statement to the jury. In that statement he admitted that he was present and actively participated in the robbery in which David Lord was killed. After the defendant had thus admitted his connection with the crime, his attorney moved to exclude the evidence as to other robberies, upon the ground that since the defendant had admitted his identity in the transaction in question, and his presence "with Honea when this robbery occurred and Lord was killed," the evidence as to other crimes "now illustrates no issue" and "could only stay in the case to the disadvantage and prejudice of the defendant." The court overruled the motion to exclude the evidence, and this ruling was assigned as error in ground 8. There is no merit in this ground. "Where a defendant is on trial for murder, proper evidence as to the circumstances of the killing is not rendered inadmissible by an admission of the defendant in open court that he killed the deceased in the county of the jurisdiction." *Currie* v. *State,* 159 *Ga.* 775 (126 S. E. 835). See also *Berry* v. *State,* 51 *Ga. App.* 442 (180 S. E. 635).

■ In ground 7 the defendant complained of the admission of the testimony of a filling-station operator, to the effect that he was

robbed at his place of business in or near Jonesboro, Georgia, early in September, about three and a half months before the commission of the murder with which the defendant was charged. The witness testified that the defendant Sisk was one of those who committed this robbery, but that he would not know the other participant. The witness further testified that as the parties who committed this robbery drove away he shot at them, and that "they shot back." Regardless of the considerations applied to the evidence complained of in grounds 1 to 6, inclusive, as hereinbefore dealt with, the evidence set out in ground 7 was not inadmissible, as contended, on the ground that it related to a separate and independent transaction and was irrelevant and prejudicial. The defendant in his statement to the jury, after admitting that he was present and took part in the robbery in which the shooting of Lord occurred, stated : "I didn't know there was going to be any shooting or a pistol fired, much less a man killed. If I had I would not have went out there." The evidence referred to in ground 7, to the effect that the witness shot at the persons who robbed him, one of whom was Sisk, and that "they shot back," was admissible to rebut the quoted part of the defendant's statement. It tended to show that by actual experience he had reasonable ground to know or to believe that shooting might take place in the commission of such a robbery, and thus to illustrate a degree of culpability impliedly disclaimed in his suggestion that he was a mere novice and did not actually anticipate that a murder might be committed. See, in this connection, *Gore* v. *State,* 162 *Ga.* 267 (10) (134 S. E. 36) ; *Morris* v. *State,* 177 *Ga.* 106 (5), 114 (169 S. E. 495) ; *Camp* v. *State,* 179 *Ga.* 292 (175 S. E. 646) ; *Turner* v. *State,* 43 *Ga. App.* 799 (16) (160 S. E. 509).

Grounds 9 and 10 respectively assigned error upon the overruling of two separate motions to declare a mistrial. These motions were based on the alleged improper admission of evidence of other robberies. Assignments of error on the overruling of objections to the same evidence have already been considered in this opinion. Since we have held that the evidence was admissible, it necessarily follows that there was no error in refusing to declare a mistrial because of its introduction. The rulings made above are not contrary to any of the decisions relied on by counsel for the plaintiff in error, including *Cawlhon* v. *State,* 119 *Ga.* 395, 396 (46 S. E. 897),

and *Booth* v. *State,* 160 *Ga.* 271 (127 S. E. 733). See references to the *Booth* case in *Cooper* v. *State,* 182 *Ga.* 42 (184 S. E. 716). See also *Loughridge* v. *State,* 181 *Ga.* 261 (182 S. E. 12). Counsel for plaintiff in error have requested this court to review and overrule the decisions in *Green* v. *State, Wilson* v. *State,* and *Morris* v. *State,* supra, and in *Suber* v. *State,* 176 *Ga.* 525 (168 S. E. 585); *White* v. *State,* 177 *Ga.* 115 (169 S. E. 499); *Honea* v. *State,* 181 *Ga.* 40 (181 S. E. 416). The request is denied.

■ In ground 11 it is complained that the court erred in admitting the testimony of Mrs. David Lord in reference to a conversation which she had with her husband in the hospital a short time after he received the wound from which he died, over objection that there was no proof that at the time of the statements attributed to the wounded man he was in a dying condition, or that he was conscious of such condition, if it existed. The admission of this evidence over the objection was not erroneous. A physician testified that he examined Mr. Lord and talked with him soon after he arrived at the hospital, and told him that he was in a critical condition and might not recover. The man died in about four days. As stated above, he was shot in the abdomen, and the evidence showed that he instantly "crumpled" and called for help. The evidence does not clearly show whether the conversation between the deceased and the physician took place before or after the conversation with Mrs. Lord, but the jury could have found from the circumstances that the statements made by the deceased to Mrs. Lord followed the examination by the physician when the physician informed the deceased that he was in a critical condition. But regardless of this, the facts and circumstances were sufficient to make a prima facie case for the introduction of the statements of the deceased as dying declarations. "In the trial of a murder case, if at the time of making declarations the condition of the wounded party making them, the nature of his wounds, the length of time after making the declarations before he expired, and all the circumstances make a prima facie case that he was in the article of death and conscious of his condition when he made the declarations, such declarations should be admitted in evidence by the court, under proper instructions to the jury." *Jones* v. *State,* 130 *Ga.* 274 (2) (60 S. E. 840); *Rounds* v. *State,* 174 *Ga.* 308 (162 S. E. 696). See also *Dumas* v. *State,* 62 *Ga.* 58 (2); *Wheeler* v.

454

*State,* 112 *Ga.* 43 (5) (37 S. E. 126); *Young* v. *State,* 114 *Ga.* 849 (2) (40 S. E. 1000); *Harper* v. *State,* 129 *Ga.* 770 (3) (59 S. E. 792); *Morrow* v. *State,* 168 *Ga.* 575 (2) (148 S. E. 500).

■ Ground 12 assigned error upon the ruling of the court admitting in evidence a certified copy of an application made by Pepperill Manufacturing Company for an automobile-license tag, and of a record to the effect that a tag numbered 86745-C was issued upon such application. This evidence was objected to on the ground that the alleged number was not identified by anybody, and that the. testimony was irrelevant and immaterial. Other evidence showed that as the parties who committed the robbery "drove in," the deceased "suspicioned something" and wrote with a red pencil certain figures on the floor. Immediately after he was shot and after the robbers had gone, he stated, "There is the motor number there." This statement was a part of the res gestæ, and evidence concerning it was admitted without objection. The witness to whom this statement was made testified that he did not remember the number at the time of the trial, but a different witness testified that he saw the number on the floor immediately after the shooting, that the number was "86745," and that he reported it to the police officers. There was testimony to the effect that a tan Ford sedan belonging to Pepperill Manufacturing Company was stolen on the night of December 19, 1934, while it was parked at the corner of Cone and Luckie Streets. After the defendant's arrest, he made to officers a written statement in which he said that he and Honea stole a tan Ford sedan at the corner of Cone and Luckie Streets about the time referred to in the testimony; and that he and his companions were using this car at the time of the robbery in which the deceased was killed. The evidence was thus sufficient to identify the license tag issued to Pepperill Manufacturing Company as the one attached to the vehicle in use by the persons who committed this robbery at the time of its commission. It is argued that the evidence tended to show that the defendant had stolen an automobile, or would at least cause a suspicion to that effect. As to such argument it is enough to say that the evidence was not objected to on this ground.

■ The evidence showed that the defendant and his companions, Honea and Daniel, had planned to rob a Mr. Monroe, who was supposed to carry large sums of money on his person. Monroe had a

place of business near the filling-station operated by Rakestraw, but his store or place of business was not open, and the parties decided to go to Rakestraw's. It appeared that Daniel lived in the same section as Monroe, and that it was Daniel's idea that Monroe had a large sum of money on his person. Sisk was incarcerated for some time before Daniel was arrested. Monroe was introduced as a witness for the State, and in ground 13 of the motion for a new trial it is complained that the court erred in refusing to allow the witness on cross-examination to testify that Mr. Barrett, of counsel for Sisk, "did come to his [Monroe's] place and put him on notice that Daniel was involved in this robbery," and "for him to be on his guard, that Daniel had not been apprehended, and Sisk was afraid that Daniel would get somebody and go to Mr. Monroe and get his money." The court did not err in excluding this evidence. It is generally held that self-serving declarations of the accused are not admissible in his favor, whether made before or after the time of the crime. *Dixon* v. *State,* 116 *Ga.* 186 (2) (42 S. E. 357); *Taylor* v. *State,* 121 *Ga.* 348 (4), 353 (49 S. E. 303). But the evidence which the defendant here sought to introduce did not amount to a statement of any sort by the defendant. It referred only to a statement by his attorney, and the evidence would have been hearsay even as to any fear or concern on the part of the defendant as to whether Monroe might still be robbed by Daniel. The evidence was clearly inadmissible.

■ It appeared from the evidence that the defendant was arrested for the robbery at Jonesboro, and was kept in jail for several weeks. There was nothing to show that he was ever tried for that offense, or how it happened that he was out of jail in December following. In these circumstances the solicitor-general propounded to a witness the following question: "After he was in jail for a month after that, how did he get out and run around Atlanta and commit a robbery?" Counsel for the defendant objected to this question as being improper, and moved for a mistrial. The court held that the question was objectionable, but overruled the motion for a mistrial. The court instructed the court reporter to read the question objected to, in order to show the State's attorney "how objectionable it was." After the reporter had read the question from his notes as directed, the solicitor-general revised and restated his question as follows: "How did he get out?" and then

addressed the court as follows: "It is hard to understand how a man could be out and around about right after that. I think we could explain such a peculiar thing as that." All of this occurred in the presence of the jury, and had reference to the defendant Sisk. In ground 14 it is complained that the court erred in not declaring a mistrial on account of these questions and the solicitor's statement, and in failing to instruct the jury that they were improper and should be disregarded. Whether or not the questions were improper, the court did not permit the witness to answer them, and under the record the mere fact that they were propounded did not require the grant of a mistrial or an instruction as to their impropriety. It is insisted that the jury could have inferred from these questions that the defendant had been guilty of some other robbery or robberies besides those about which the court had permitted the witnesses to testify, and that the questions therefore tended to increase and aggravate the prejudicial effect of the testimony as to other crimes. The defendant stated to the jury that he got "in jail and ran around, and it led on to this." In this statement he admitted his actual participation in the robbery, in the commission of which the killing occurred. He also stated to the jury that he was in the Winder robbery. The questions propounded by the solicitor-general did not imply, as contended, that the defendant had committed any robberies additional to those which the defendant in effect confessed in his statement to the jury, and manifestly the defendant was not prejudiced by the question as to his running around and committing a robbery. Nor did the unanswered question, "How did he get out of jail?" constitute ground for a mistrial or require cautionary instructions. There is no merit in ground 14 .

In a supplemental brief filed in behalf of the plaintiff in error, several constitutional questions have been argued. These questions were not raised in the trial court or in any of the assignments of error, and therefore they will not be decided by this court. *Brown* v. *State,* 114 *Ga.* 60 (2) (39 S. E. 873) ; *Griggs* v. *State,* 130 *Ga.* 16 (60 S. E. 103) ; *Loflin* v. *Southern Security Co.,* 162 *Ga.* 730 (3) (134 S. E. 760) ; *Dunaway* v. *Gore,* 164 *Ga.* 219 (4), 230 (138 S. E. 213). The court did not err in overruling the motion for a new trial. *Judgment affirmed. All the Justices concur.*