ETHERIDGE *v.* THE STATE.

No. 12455. October 15, 1938.

32

*Ernest M. Smith,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Frank B. Willingham, solicitor-general, Ellis G. Arnall,* and *Emil J. Clower,* contra.

JENKINS, Justice. 1. "Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide." Code, § 38-307. "A prima facie case is all that is necessary to carry dying declarations to the jury. When this has been made out, the declarations are admitted, and the ultimate determination as to whether or not the person making them was in articulo mortis and realized that death was impending is for the jury." *Findley* v. *State,* 125 *Ga.* 579 (54 S. E. 106). "That the declarant was in articulo mortis may be shown by the nature of the wound, and the declarant's consciousness of impending death may be established by other evidence. It need not appear from the declaration itself, and may be determined from all of the circumstances." *Simmons* v. *State,* 181 *Ga.* 761, 763 (184 S. E. 291) ; *Johnson* v. *State,* 169 *Ga.* 814, 823 (152 S. E. 76), and cit.; *Sisk* v. *State,* 182 *Ga.* 448 (4), 453 (185 S. E. 777) ; *Rounds* v. *State,* 174 *Ga.* 308, 310 (162 S. E. 696) ; *Jones* v. *State,* 150 *Ga.* 775 (105 S. E. 495). The testimony as to the nature of the stab-wounds of the deceased and the circumstances attending his statements, made two or three hours before his death, that these wounds had been inflicted by the defendant with an ice-pick, was sufficient to authorize the admission of such statements as dying declarations, and a charge of the law thereon, without regard to their admissibility on the additional theory that the defendant was present when they were made. Such testimony and the circumstantial evidence for the State authorized the verdict of guilt of murder.

2. After a preliminary examination of a witness as to the alleged dying declarations, and after the return of the jury from their retirement during the examination, the court said to them : "This evidence is being admitted to you by the court for your final determination under the rules of law which I will give you in charge. In other words, this evidence is being admitted for such probative value that you believe it is entitled to receive; that is, the statement when made was made by the deceased, being conscious of the fact that he was in what is known as the article of

death or actually in a dying condition, because if you don't believe the statement was made while he, the deceased, was in that condition, it would not be of any value as a dying declaration. The condition upon which a dying declaration is to be received by the jury is that they believe from all the facts and circumstances in the case that the person who made the declaration believed himself or was conscious that he was in a dying condition." This instruction when taken in connection with the charge giving the "rules of law" on this subject, as referred to in the charge, and set forth in the next paragraph of this opinion was not subject to the exception that it expressed an opinion that the declarations in question had been actually made or amounted to dying declarations.

3. The following charge was not subject to the exception that it expressed an opinion that the alleged statements of the deceased were actually made, that the deceased was in a dying condition, that his alleged statements were dying declarations, or that the deceased knew he was dying, and that the charge was erroneous in law, misstated the issues, and was confusing: "Testimony has been admitted by the court for the *consideration of the jury* as dying declarations which is admissible and can be *considered* by the jury only when it is proven that when the declarations were made the deceased was in extremis, or in the article of death, and was conscious of his condition that death was impending. The jury may determine for themselves from the evidence and facts and circumstances of the case whether or not this consciousness, if such was true at the time the *alleged* declaration was made by the deceased, was such a consciousness by the deceased that he was in a dying condition or in the article of death, and in arriving at the answer to this question as to whether or not he was in the article of death, the jury may take into consideration the nature of his wounds and the jury may infer that the deceased was conscious of being in a dying condition because of the nature of his wounds or from other circumstances as introduced before the jury. Now, gentlemen of the jury, dying declarations should always be *received with great care and caution*. When such evidence is admitted for the *consideration of the jury*, it is submitted to them as to its probative value, that is, the jury will also pass upon the question as to whether or not such declarations were made in the article of death by the deceased, as well as the *credibility of the witnesses tes-*

*tifying to the declarations,* and whether or not such declarations, taken into consideration together with all the evidence in the case and the defendant's statement, establishes to the jury's satisfaction beyond a reasonable doubt that the defendant killed the deceased in the manner as is alleged in count one of the indictment, and not under circumstances of justification, mitigation, or alleviation." Immediately preceding this language, the judge charged the rule of the Code, § 38-307, and as follows: "It is *contended* . . by the State *that a dying declaration was made* by the deceased . . as to what was the cause of his death, connecting the defendant now on trial with his death, and on the principle—or rather subject of dying declarations, I give you the following charge: Dying declarations, made by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, are admissible in evidence in the prosecution for the homicide." In the absence of request, it was not error to fail to elaborate these instructions by charging more specifically that it was for the jury to determine whether declarations were made and were in fact dying declarations, and that the jury must be so satisfied beyond a reasonable doubt. See *Morris* v. *State,* 177 *Ga.* 365, 368 (170 S. E. 217); *Fitzpatrick* v. *State,* 149 *Ga.* 75, 79 (99 S. E. 128).

4. The doctor who attended the deceased testified: "The defendant, Buck Etheridge, was right around the bed at the time I had the conversation with the deceased. He helped put him to bed and put hot irons to him. I was not looking right at the defendant, but he was in the room." Other witnesses testified, without dispute by evidence or by the statement of the defendant, that he was standing at the foot of the bed of the deceased at the time of the alleged statements, admitted as dying declarations, and that the defendant made no reply or statement with reference thereto. Immediately after the testimony quoted, the court said, in the presence of the jury: "It would not necessarily require a consciousness of death upon the part of the deceased in order to receive that testimony, but it should not be confused, and I will attempt to prevent the jury from combining it with a dying declaration." The court did not charge as to the admission of this evidence and similar alleged statements by the deceased, except on the theory of dying declarations as stated. The quoted statement

of the court taken with the charge, was not subject to the exception that it expressed an opinion that the defendant was present and heard the alleged declarations, and was calculated to impress the jury that it was not necessary for them to find that the declarations were dying declarations. In no event could the statement reasonably have been prejudicial to the defendant. Further, such a remark of the court, without any motion for a mistrial or other protest invoking a ruling thereon could not be later attacked merely in the motion for new trial. . *Morris* v. *State,* 185 *Ga.* 67 (194 S. E. 214) ; *Armstrong* v. *State,* 181 *Ga.* 538, 540 (183 S. E. 67) ; *Perdue* v. *State,* 135 *Ga.* 277 (69 S. E. 184) ; *Tanner* v. *State,* 163 *Ga.* 121 (9), 130 (135 S. E. 917), and cit.; *Brooks* v. *State,* 183 *Ga.* 466 (188 S. E. 711, 108 A. L. R. 752).

5. The judge charged as follows: "If you believe beyond a reasonable doubt that the defendant killed the deceased, and if you find from the evidence establishing the homicide that there were no facts of justification, alleviation, or mitigation, you would have the right to imply that the killing was felonious and constituted murder, and the burden then would be shifted to the defendant to rebut such presumption of a felonious killing by proof or his statement that the killing was not done with malice aforethought either express or implied, but under facts establishing justification, alleviation, or mitigation; and if he fails to rebut such presumption, you would be authorized to find him guilty of the offense of murder." The undisputed evidence showed that the deceased was killed by being repeatedly and fatally. stabbed with an ice-pick, and that he and his home had been set on fire. The defendant in his statement merely denied generally that he had anything to do with the killing, or that he was at the house of the deceased until after the deceased was found in such condition. The charge complained of was not erroneous, in the absence of any proved fact or circumstance indicating justification, or alleviation, excuse, or accident. See *Fitzpatrick* v. *State,* 149 *Ga.* 75 (3), 80 (99 S. E. 128) ; *Gaillard* v. *State,* 149 *Ga.* 190 (99 S. E. 629) ; *Hudgins* v. *State,* 2 *Ga.* 188; *Mann* v. *State,* 124 *Ga.* 760, 762 (53 S. E. 324, 4 L. R. A. (N. S.) 934), and cit.; *Benton* v. *State,* 185 *Ga.* 254, 255 (2) (194 S. E. 166) ; *Brown* v. *State,* 184 *Ga.* 305 (191 S. E. 108), and cit. In *Patterson* v. *State,* 181 *Ga.* 698, 702 (184 S. E. 309), where only the use of words assuming that there

was a "homicide," in a similar charge, was criticized, without a ruling as to whether this amounted to reversible error, the criticism was based on the fact stated, that "under the law and the evidence . . . death could have been attributed to *accident*."

6. The court did not err in charging that "Moral and reasonable certainty is all the law requires in a legal investigation," without giving the rest of Code, § 38-105, that "in all civil cases the preponderance of evidence is considered sufficient to produce mental conviction," and that "in criminal cases a greater strength of mental conviction is held necessary to justify a verdict of guilty," where, immediately after the language complained of, the court charged the correct rule in criminal cases, substantially as codified in § 38-110, "but, whether dependent upon positive or circumstantial evidence, the true question in every criminal case is not whether it be possible that the conclusion to which the evidence points may be false, but whether or not there is sufficient evidence to satisfy the minds and consciences of the jury of the defendant's guilt under the indictment as therein alleged beyond a reasonable doubt." See *Howell* v. *State*, 160 *Ga.* 899 (4, 5) (129 S. E. 436); *Williams* v. *State*, 125 *Ga.* 302 (3), 306 (54 S. E. 108).

7. The first count of the indictment charged the defendant with murdering the deceased by stabbing and cutting with an ice-pick; and the second count, with murdering him by stabbing and cutting with an ice-pick and setting fire to his body and house. The undisputed evidence showed that while the deceased was found in a dying condition, stabbed with an ice-pick and afire, the stab wounds rather than burns caused death. The judge read the first count to the jury, and then charged: "That is count number one, gentlemen, of the indictment, and the other count, which is count number two of the indictment, is withdrawn by the State, and it is not necessary that I should read that count to you, but only to instruct you that you would not be authorized to find him guilty under the second count of the indictment." Later he charged: "If you believe that the State has not carried the burden which is imposed upon the State and the defendant is not guilty of the crime of murder as alleged in count one of the indictment, it would be your duty to find the defendant not guilty, and in that event the form of your verdict would be, 'We the jury find the defendant not

40

guilty.'" In view of these clear instructions, it was not error to refuse the request to charge that "under the evidence you would not be authorized to find the defendant guilty under the second count; that is, the count charging that the defendant killed [the deceased] by setting fire to his body and to his house. You will therefore not consider the second count, or any evidence offered in support of it." Furthermore, the latter part of the request, relating to the undisputed testimony that the deceased had been set afire, would have been improper as eliminating this part of the res gestæ from consideration.

8. There was no expression of opinion or misstatement of the contentions of the defendant, such as reasonably might have confused the jury, in the charge that "The defendant, as I have already stated to you, . . denies his guilt of the crime of mur-dler, and says that he is guilty of no offense under this indictment for the reason that he did not slay the deceased as is alleged in count one of the indictment;" or in the charge that "He contends . . that he was not at the scene of the crime and he did not inflict any of the wounds which resulted in the death of the deceased which are alleged in count one of the indictment."

*Judgment affirmed. All the Justices concur.*